## ALCIE WALDON v. STATE.

No. A-2990.   Opinion Filed Sept. 16, 1919.

(183 Pac. 637.)

1.	**HOMICIDE—Self-Defense—Motives.** In a homicide case, where the defendant testifies that he killed the deceased "partly on account of wrongs done his mother by the deceased," his plea of self-defense held not sustained.

2. **HOMICIDE—Manslaughter in First Degree—Sufficiency of Evidence.** The record in this case carefully considered, and found that the verdict is sufficiently supported by the evidence, and the trial of the case free from prejudicial error.

*Appeal from District Court, Jefferson County;*
*Cham Jones, Judge.*

Alcie Waldon was convicted of manslaughter in the first degree, and he appeals. Affirmed.

*Bob Turner* and *Bridges & Vertrees,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error Alcie Waldon, hereinafter referred to as defendant, was informed against jointly with Fred Wratislaw and Martha E. Wratislaw for the murder of O. J. McCarty; a severance was granted on the motion of the state; the defendant was tried separately, convicted, and sentenced to imprisonment in the penitentiary at McAlester at hard labor for 30 years. To reverse the judgment rendered, he prosecutes this appeal.

The material uncontradicted evidence is: That on the morning of the day that the deceased was killed the defendant came to the city of Ringling, and after going to several places, and after he had secured a pistol which belonged to him, and which he had previously loaned to another, the defendant went to a law office, where his mother and stepfather were, and about 15 minutes after leaving said office met the deceased, whom, prior thereto, he did not know was in the city, and shot him three times, from the effects of which said shots the deceased about four months later died; that immediately after the

shooting a pistol was found in the overcoat pocket of the deceased.

The evidence was in conflict as to the circumstances surrounding said killing—witnesses testifying that they were near the scene of the homicide, and saw the defendant and the deceased just before and at the time the defendant shot the deceased; that deceased, just before he was shot, did not say anything to, or make any demonstrations against, the defendant. The defendant testified that on the day he killed the deceased he met him in the middle of the street in Ringling; that he was five or ten feet from him when he first saw him; that the deceased ran his hand back and said, "You son of a bitch, I am going to kill you"; and "that he [defendant] then got his gun and shot him." On cross-examination, the defendant testified that he knew the deceased had whipped and wronged his mother; "that he was thinking about it when he killed him; that that was not all he killed him for, just partly"; that he shot him to prevent the deceased from shooting him; that he shot in self-defense.

On the cross-examination of the defendant, in response to questions propounded to him about what occurred at the store of the deceased on the Thursday preceding the Monday on which the deceased was killed, he answered:

"That he was at said store at the time named in company with his mother, brother, and stepfather; that deceased was asked if he was ready for a settlement, and said, 'Yes,' and that he would rather that Brooks and Elder were there; that he did not feel like going to town; that the defendant went to Ringling for Brooks and Elder, who declined to come, and upon the defend-

ant's return to the store, and reporting the result of his trip, the deceased said, 'We will go,' which they did; that he [defendant] did not in said store, and in the presence of his mother and Fred Wratislaw, tell the deceased that he had to make a deed to the land, and that he was going to get a notary public to take the acknowledgment; that there was no gun in the party, and that no unpleasantness occurred at said store at the time named."

As it is not even suggested in defendant's brief that the verdict of the jury is not sufficiently supported by the evidence, and he rests a reversal of this case alone upon the alleged error of the trial court in excluding evidence, offered on redirect examination, that the defendant, his mother, and stepfather were at the store of deceased, which was situated about four miles from Ringling, on the Thursday preceding the killing of the deceased on the following Monday, by the invitation of the deceased, we deem it unnecessary to detail more of the evidence than we have done, other than as may be necessary to an intelligent review of the error complained of, to which an exception was saved. The offered evidence, on redirect examination, which was excluded, was that a day or two before the defendant, his mother, and stepfather went to the store of the deceased, the deceased requested the witness Wilson to go to the defendant, his mother, and stepfather, and ask them to come to his store that he might settle with them and deed them back the property of which he had defrauded them and a letter, the only identification of which was the admission of the deceased that he had the letter written, and that it had been received by the addressee, through the due course of mail, from the deceased to the mother of the defendant, who resided in New Mexico, requesting her to return to Oklahoma, that he might, as he desired to

do, make restitution to her of the property of which he had defrauded her and pay her an indebtedness he was owing her, and expressing great appreciation of his treatment by her, and asking her to go to Mexico, to which country he intended shortly to remove.

It was stated by counsel for defendant, when offering said evidence as to defendant having been at the store of the deceased by invitation of deceased, on Thursday preceding Monday on which the deceased was killed:

"That it was offered principally for the reason that the state had attempted to show that this defendant, together with his mother and stepfather, had gone to the place of business of the deceased, and practically forced him to execute a certain deed and a bill of sale to certain personal property."

The evidence developed by the cross-examination of the defendant as to what occurred at the store of the deceased on the Thursday preceding the Monday on which the homicide was committed, was not germane to any issue involved in this case, and ought to have been, and doubtless would have been, excluded on proper motion, which was not made.

"The admission of evidence not germane to the issue involved, but which in no wise tends to show the guilt of the defendant, while not approved, is not prejudicial error." *Davis v. State*, 15 Okla. Cr. 386, 177 Pac. 621.

After a very careful reading of the entire record we have been unable to find that there was any evidence on the part of the state tending to show that the defendant, together with his mother and stepfather, had gone to the place of business of the deceased and practically forced him to execute a deed and a bill of sale on Thurs-

day preceding the Monday on which the deceased was killed. Whether or not the defendant and others went to the store of the deceased by his invitation, and what the state attempted to show, and failed to show by evidence, is entirely foreign to any issue involved in this case, and the evidence offered on redirect examination of the defendant, including said letter, even if it was sufficiently identified, which we deem unnecessary to determine, to show that the defendant went to said store at the invitation of the deceased, was not in rebuttal of any evidence elicited on his cross-examination, and the court did not commit reversible error in excluding the said evidence, which is the basis of the only alleged error assigned and argued in defendant's brief.

It is the well-settled law of this state that, to maintain the plea of self-defense, it must be made to appear that the accused was free from fault in bringing on the difficulty, and had reasonable grounds to believe that he was in imminent danger of suffering death or great bodily harm at the hands of the person slain, and that there was a necessity to kill in order to save himself therefrom, and though the evidence as to self-defense be in conflict, if there is evidence, as in the instant case, to support the verdict, this court will not disturb it.

"In a homicide case, where there is evidence supporting the theory of the state that the defendant did not act in self-defense and also evidence  *   *   *   that he acted in self-defense, it is the exclusive province of the jury to determine which is the correct theory, and, having done so; if the instructions of the court properly present the law of the case, this court will not disturb the verdict." *McClatchey v. State,* 15 Okla. Cr. 448, 177 Pac. 922.

Where the accused, as in the instant case, admits the killing, and testifies that he killed the deceased "partly on account of wrongs done his mother by deceased," his plea of self-defense is not sustained. In *Wells v. Territory*, 14 Okla. 436, 78 Pac. 124, it is held:

"The law of self-defense does not imply the right of attack, nor will it permit of acts done in retaliation, or for revenge."

In *Caughorn v. State*, 99 Ark. 462, 139 S. W. 315, it is held:

"If defendant sought, brought on, or voluntarily entered into a difficulty  *  *  *  for the purpose of vengeance, or if he shot and killed deceased with no reasonable apprehension of immediate and impending injury to himself, but from a spirit of retaliation and revenge for past injuries, he could not avail himself of the law of self-defense and should not be acquitted, no matter how great the danger or imminent the peril to which the defendant may have believed himself exposed during the difficulty."

In *Gibson v. State*, 89 Ala. 121, 8 South. 98, 18 Am. St. Rep. 96, it is held:

"If the defendant sought the difficulty with the deceased, for the purpose of chastising or beating him for some real or imaginary cause, and armed himself with a pistol for use, if necessary, and did use it, and killed the deceased, he is guilty of murder, although it may have become necessary for him to use the pistol during the encounter in order to save his own life or to prevent great bodily harm."

In *Young v. State*, 53 Tex. Cr. R. 416, 110 S. W. 445, 126 Am. St. Rep. 792, it is held:

"If one provokes a difficulty intentionally, to secure a pretext to inflict some unlawful injury on the person

attacked, but not for the purpose of killing him or inflicting serious injury upon him, he cannot thereafter justify the killing of such person on the ground of self-defense."

In *State v. Herrell,* 97 Mo. 105, 10 S. W. 387, 10 Am. St. Rep. 289, it is held:

"One who brings on a difficulty with the purpose of wreaking his malice by slaying his adversary or doing him some great bodily harm, and, actuated by such felonious purpose, does the homicidal act, cannot avail himself of the right of self-defense and is guilty of murder in the first degree."

In 13 R. C. L. sec. 138, it is said:

"The rule is thoroughly established, and its general terms are universally recognized, that a plea of self-defense cannot be sustained, when the defendant shows that he was the aggressor and provoked the difficulty, or where he acted in retaliation. Neither state of facts is sufficient to show that necessity upon which the law of self-defense is based."

The above text is supported by citations of the courts of last resort of Alabama, California, Florida, Georgia, Illinois, Kansas, Missouri, New York, North Carolina, South Carolina, Ohio, Pennsylvania, Tennessee, and Texas.

The defendant by his own evidence is shown to be guilty of at least manslaughter in the first degree, as found by the jury, while the entire evidence warranted his conviction for murder.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.