## MATTIE NAIL v. STATE.

No. A-5186.   Opinion Filed Dec. 17, 1925.
Rehearing Denied Jan. 23, 1926.
(242 Pac. 270.)

Eaton, Gilder & Rose, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J. For convenience and brevity the plaintiff in error will be referred to as defendant.

The defendant argues the following contentions as ground for reversal: First. Error of the court in refusing to give requested instructions and in the giving of erroneous instructions. Second. Error in the admission of evidence on the part of the state. Third. The insufficiency of the evidence. These assignments will be considered in the order presented.

This prosecution arose on account of the death of John Falcone, caused by his being struck by an automobile driven by defendant. The facts, briefly stated, are that on the 25th day of December, 1922, the deceased and three companions were driving on the paved highway between the city of Okmulgee and the town of Morris. About 2½ miles east of Okmulgee they stopped to fix a tire, when the defendant, with four companions, drove an automobile against the deceased, killing him almost instantly. The information charges murder. The verdict is for manslaughter in the second degree, and the punishment fixed at 2 years in the state penitentiary. The state produced several witnesses who testified that they saw the collision and gave in detail an account thereof, which evidence tends to sustain its theory of murder.

Summarized, the evidence for the state is, in substance: That the deceased had stopped his car facing the east, with his left wheels about 18 inches on the pavement, the remainder of the car on the ground outside the pavement, and was at the rear, apparently replacing the tire on the carrier. That the defendant drove from the west going east, at a speed of from 35 to 40 miles per hour, zigzagging from one side of the pavement to the other, and when about 50 yards from the car of deceased headed straight for him, struck the deceased and his car, killing the deceased, and knocking his car several

feet forward and from the highway into the ditch, and the car driven by defendant was turned at right angle with the road and in the ditch on the opposite side. That defendant did not seem to have control of the car she was driving, and did not perceptibly slacken her speed That there was no obstruction, other vehicles, or curve in the highway to prevent her seeing the deceased or avoid striking him. There was some evidence that a bottle or bottles smelling of whisky were at the car of defendant immediately after the collision, and that upon her surrender to the officers some 8 hours later she was intoxicated. There was also some evidence that after the collision the defendant started to flee. She did return to Okmulgee immediately after the collision, and from there went to Sapulpa, but from that point returned to Okmulgee and surrendered herself to the city officials.

The evidence for the state and for the defendant was sharply conflicting. The defendant produced the several witnesses who were in the car with her, who testified that they saw the collision and gave in detail an account tending to sustain her theory that the death of deceased was due to an unavoidable accident.

The evidence on the part of defendant is, in substance: That she was going east at a speed not to exceed 25 miles per hour just before the collision, was in the rear of a Ford car, and did not see the car of deceased which had stopped. That she passed the preceding Ford car to the left, and then for the first time saw the car of deceased, and at the same time another car coming from the opposite direction passed the car of deceased, not leaving her room to pass, and that she then attempted to go between the cars, and in doing so struck the rear left fender and wheel of the car of deceased. That she had applied her brakes and had almost stopped when the collision occurred. That she was without fault, was not

intoxicated nor drinking. That the collision was an unavoidable accident.

At the time charged in the information, this state had not enacted any law specifically regulating the operation of motor vehicles upon the highways. The Act approved March 28, 1923 (chapter 16, Session Laws of 1923), having been subsequently enacted. If the defendant had intentionally driven her car against the deceased, with a premeditated design to injure him, or in so driving had perpetrated an act imminently dangerous to others and evincing a depraved mind regardless of human life, although without a premeditated design to effect the death of any particular individual, she would have been guilty of murder. Section 1733, Comp. Laws 1921. The jury by its verdict found that neither of such conditions existed. Then, in order to find the defendant guilty, it was necessary that the jury find she caused the death of deceased by an act of culpable negligence under the provisions of section 1745, Comp. Laws 1921, as follows:

"Any killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree."

Now, if the act of the defendant which caused the death of John Falcone, as shown by the evidence, was an act of culpable negligence as provided by the above statute, and the issues were fairly submitted, the jury were warranted in returning the verdict they did.

Culpable negligence is not defined by our statute, but this court in the case of Clark v. State, 27 Okla. Cr. 11, 224 P. 738, defined it as follows:

" 'Culpable negligence' " is "the omission to do something which a reasonable, prudent, and honest man would do, or the doing of something which such a man would

not do, under the circumstances surrounding the particular case."

This definition is found in 2 Words and Phrases, First Series, p. 1780; 1 Bouvier's Law Dictionary (Rawle's 3d Ed.) 736; People v. Buddensieck, 103 N. Y. 487, 9 N. E. 44, 57 Am. Rep. 766; State v. Emery, 78 Mo. 77, 47 Am. Rep. 92; State v. Coulter (Mo. Sup.) 204 S. W. 5; Berry on Automobiles (3d Ed) § 1571.

The foregoing definition, it seems to us, is redundant in the use of the word "honest." Negligence does not depend upon the honesty of the individual in the usually accepted sense, but upon his prudence and care or the lack thereof with which his acts are done in the particular case.

The term is also defined in an earlier case in this court (Kent v. State, 8 Okla. Cr. 188, 126 P. 1040) as:

"The want of that usual and ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions."

When do the negligent acts of an individual cease to be mere neglience and become culpable or criminal negligence? What is the test by which criminal responsibility becomes a consequence of a negligent act? Beven in his excellent work, "Negligence In Law," vol. 3, p. 7, says:

"The term 'criminal negligence' has reference mainly to the authority by whom reparation is sought. An inseparable accident of criminal negligence may be that it is a violation of duty imposed for the preservation of human life. It is criminal because it constitutes a violation of an obligation to the state, and which can only be remitted by the state. Criminal negligence per se does not differ from negligence simply. The same negligence, as it affects the individual and the state, is, respectively, gross negligence and criminal negligence. While it is

the groundwork of reparation to the private individual, however heinous it may be, it is no more than negligence. So soon as it is the subject-matter in respect of which reparation is exacted by the state, it becomes criminal negligence. * * * Criminal negligence then is negligence in such circumstances that it imposes an obligation remissible by the state, but irremissible by the individual actually damnified by it; and since the state will not lightly intervene, criminal negligence must be some 'substantial thing' and not a mere casual inadvertence. Between criminal negligence, however, and actionable negligence, there is no principle of discrimination, but a question of degree only."

By no means every instance where one person is injured or killed by a vehicle driven by another do the circumstances constitute a crime. There must be negligence rising to the degree of criminal or culpable negligence. The culpability of a defendant is a question of fact for the jury, and the test is: Do the acts charged as criminal show a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and did said acts cause the death of deceased? If so, it establishes a case of criminal negligence.

It is argued that the court erred in refusing to give defendant's requested instructions Nos. 1 and 2, in support of her contention that deceased came to his death by unavoidable accident. Requests for instructions Nos. 1 and 2 are as follows:

"No. 1. You are further instructed that, although you may find that the defendant was driving her car at a rapid rate of speed upon said road, if you further find from the evidence that, as soon as she could see said John Falcone or the car upon which he was working, she did everything in the management and handling of said car that would appear to a reasonable person to be the proper thing to be done under the circumstances, then in that event you must find the defendant not guilty.

"No. 2. You are instructed that, if you find from the evidence, or have a reasonable doubt thereof, that the

defendant, as soon as she saw said John·Falcone and the car upon which he was working, did everything which could reasonably be done to avoid injuring said John Falcone, then you must find the defendant not guilty."

These requests embody her theory. The law that a defendant in a criminal case is entitled to an instruction upon his theory of the case and upon the hypothesis that his testimony is true applies, however, only when there is evidence to support the theory, and where it presents an issue upon which he may be acquitted, or upon which the offense may be reduced to a lower degree. Holmes v. State, 6 Okla. Cr. 541, 119 P. 430, 120 P. 300.

Neither of the defendant's requests for instructions Nos. 1 or 2 state the correct rule of law. Under these requests it would be immaterial how much traffic is on a street or highway, and immaterial at what rate of speed an automobile is driven, nor how dangerous the situation created by the act of the driver, if, when he sees a person in danger he manages and handles his car as appears proper to a reasonable person to prevent injuring the person, he would be exonerated from any criminal liability. The doctrine of last clear chance for the protection of a trespasser in measuring civil liability is at least as favorable as the rule here contended for. State v. Campbell, 82 Conn. 671, 74 A. 927, 135 Am. St. Rep. 293, 18 Ann. Cas. 236; State v. McIver, 175 N. C. 761, 94 S. E. 682.

Upon the theory of the defendant, the court gave instruction No. 5, as follows:

"It is admitted by the defendant that she was driving said automobile on the day and date contained in the information, and admits that she did drive said car over and against the body of the said John Falcone, and did then and there and thereby cause his death, but claims as her defense that it was excusable homicide; that is to say, that the said John Falcone met his death of the result of an unavoidable automobile accident, and in this connection you are in-

structed that, if you find and believe from the evidence that the said John Falcone did come to his death as a result of an unavoidable automobile accident, then the homicide would be excusable homicide, and you must find the defendant not guilty, or, if you should have a reasonable doubt as to whether or not the killing of John Falcone was the result of an unavoidable automobile accident, then it will be your duty to resolve that doubt in favor of defendant and acquit her.''

No exception was taken to this instruction, but it is now argued that it puts the burden of proof upon the defendant. The purpose of this instruction was to inform the jury of the defendant's theory and to advise them that, if they found the theory sustained by the evidence, or had a reasonable doubt thereof, they must acquit the defendant. In addition to that, the jury were told that the burden of proof was upon the state to prove every material allegation of the information beyond a reasonable doubt before the defendant could be convicted, and that the presumption of innocence was with the defendant and abided with her throughout the trial until overcome beyond a reasonable doubt. And again, if upon the whole case they had a reasonable doubt of the defendant's guilt of the crime charged, it was their duty to resolve that doubt in favor of the defendant and acquit her. Considering all these instructions together, the defendant was not deprived of the presumption of innocence nor the burden to establish her innocence cast upon her.

Complaint is also made of the court's instruction No. 6. The latter part of this instruction is rather involved, but the instruction as a whole, if it has any meaning, is fully as favorable to the defendant as the law warrants. The gist of this instruction is found in State v. Goetz, 83 Conn. 437, 76 A. 1000, 30 L. R. A. (N. S.) 458. Instruction No. 7 informs the jury clearly what they must find beyond a reasonable doubt in order to find the defendant guilty. Considering the whole charge together, we believe it in-

forms the jury fairly the law of the case, and is without prejudicial error.

It is also argued that the court erred in permitting evidence tending to prove that some 8 or 10 hours after the collision defendant was drunk as being too remote. Intoxication of a defendant at the time of an automobile collision may be shown as tending to prove negligence. Berry on Automobiles (3d Ed.) § 1573.

There was evidence of the manner in which the car was driven, and of bottles smelling of whisky in the car driven by defendant, having a tendency to prove intoxication, and, while the evidence of the condition of defendant at the time she surrendered to the officers was remote, we think it was not erroneous; at least not sufficiently erroneous to amount to substantial prejudice. It was a matter proper to be submitted to the jury, and the remoteness in point of time goes rather to its weight than to its admissibility.

Upon the contention that the evidence is insufficient to sustain the verdict, the defendant advances the argument that the testimony of the witnesses for the state that the defendant at the time she struck deceased was traveling at a dangerous rate of speed is refuted by the physical facts, since, if a six-cylinder Buick, the kind of car driven by defendant, as disclosed by the evidence, going at that speed, had struck a Chevrolet car, the car of the deceased, as shown by the evidence, both would have been demolished, and these physical facts, together with the testimony of the witnesses for the defendant would outweigh the evidence for the state; that it cannot be said that the evidence reasonably sustains the verdict, but does sustain the contention of the defendant that she had attempted to stop her car and had almost succeeded, and demonstrates that the collision was an unavoidable accident.

Taking the evidence here which tends to sustain the

verdict of the jury that the defendant in driving her car against the deceased was guilty of culpable negligence, it will be seen that the jury might find that the defendant upon a highway, where there were various persons traveling in both directions, and where a reasonable person must expect frequently to overtake or pass other vehicles, drove at a high rate of speed, without having her car under control, and without watching the highway for other travelers with whom she might have collision, and without any obstruction to her view, drove against the deceased who had stopped at the edge of the highway with his car in plain sight, and caused his death. Or taking her theory that she was following a car immediately preceding her, she in like manner, without seeing that the highway ahead was clear, attempted to pass a preceding car, and, in order to avoid a car coming from the opposite direction, drove against and caused the death of deceased. In either event she was guilty of negligence. If the highway was clear, as the evidence of the state shows, and no car immediately preceding the defendant, nor any car coming from the opposite direction, her running upon the deceased and causing his death is wholly inexcusable, and certainly her negligence is of such a gross character as to fall clearly within the degree defined as culpable. But, if she attempted to pass a preceding car without looking ahead to ascertain if a car was coming from the opposite direction and that she might safely pass, or without having her car under control and at a reasonable rate of speed, she brought about a situation from which she was unable to extricate herself except by running against and killing deceased, this was culpable negligence which renders the defendant criminally liable.

The highways of the state are common property of all, and by whatever method or conveyance they are used for travel, persons upon the highways have equal rights. In exercising these rights, each must have regard for the rights of others. The law gives the right to use the high-

ways for travel by automobile, but this right is limited to doing so in a legal and prudent manner, and when a person drives upon the highway in the exercise of such right in a negligent manner, so that his negligence affects others likewise lawfully upon the highway to their injury, he becomes liable to the injured party, and, if the degree of negligence with which the act is done is culpable within the meaning of the law, he becomes liable to the state for criminal negligence.

Upon an examination of the whole case, we see no reason to disturb the verdict and judgment.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.