CHARLEY SMITH v. STATE.

No. A-6763. Opinion Filed Feb. 15, 1930.
(287 Pac. 1103.)

Hodge & Schenk, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted of the crime of manslaughter in the second degree, and his punishment fixed at two years in the state penitentiary.   Motion for a new trial was filed, considered, and overruled, and the defendant has appealed by petition in error with case-made attached to this court.

The first question urged by the defendant is the action of the trial court in overruling his motion to quash the indictment returned by the grand jury against him. The defendant in his action states as grounds for quashing the indictment that the court in issuing his order for drawing the grand jury did not direct the same to the sheriff and court clerk, as the law directs, but to Jesse J. Lasley, deputy court clerk for Carter county, and T. B. McLish, undersheriff of said county; that all of the twenty-four men drawn by the deputy court clerk and the undersheriff qualified; that the said trial judge from the said qualified jurors selected the requisite number necessary for a grand jury without ordering the names of all jurors drawn from the box and qualified as grand jurors placed in the box and shaken up and a sufficient number drawn from the box to constitute a grand jury.

Section 3517, C. O. S. 1921, provides for calling a grand jury in part as follows:

162

"Prior to or during any term of court at which a grand or petit jury shall be required, the judge of the district court shall certify to the clerk of the district court the number of jurors that will be required for either a grand or petit jury and shall direct said jury to be drawn and summoned at such time as he may indicate. Upon receiving such order, the clerk of the district court, or his deputy, shall notify the sheriff, or his deputy, of the time of the drawing of such jury, and the sheriff, or one of his deputies, and the clerk of the district court, or one of his deputies, shall take the box containing the names of the jurors so selected, and thoroughly shake the same * * *. The first names drawn, to the number stated in the judge's order, not to exceed twenty-four, if a grand jury is ordered, shall be summoned as grand jurors, and the grand jury shall be empaneled from said persons."

It is urged by the defendant that the order of the court filed with the court clerk directing that the deputy court clerk and the undersheriff draw twenty-four names from which a grand jury was to be selected was a violation of the statute, and, by reason of the action of the court, the indictment should be quashed.

It is also contended by the defendant that the indictment should have been quashed because the names of the men summoned to serve as grand jurors were not, after they had qualified as legal jurors, placed in a box and twelve names drawn therefrom and the twelve names thus drawn sworn to sit as a grand jury, instead of a selection of twelve from the twenty-four summoned and qualified by the district judge, as was done in this case. There is no contention by the defendant that the district judge did not select from the twenty-four summoned twelve men to sit as the grand jury and that the twelve men selected were impaneled as a grand jury and did return the indictment in this case, nor is there any charge made that the district judge in selecting the grand jury acted im-

properly in making his selection, nor is it disputed that all of the twelve men selected were qualified to sit as grand jurors. The only question being urged is the manner in which they were selected. Section 3517, C. O. S. 1921, provides the manner of selecting the members of the grand jury as follows:

"* * * The first names drawn, to the number stated in the judge's order, not to exceed twenty-four, if a grand jury is ordered, shall be summoned as grand jurors, and the grand jury shall be empaneled from said persons."

There is no provision in chapter 7, art. 6, of our Code of Criminal Procedure (Comp. St. 1921, §§ 2510-2546), that requires the court when impaneling a grand jury to place the names of the jurors summoned and qualified in a box and then draw the twelve men to constitute the grand jury from the box; the only requirement being that the twelve men selected for a grand jury must be impaneled from the twenty-four persons whose names were first drawn from the list by the clerk and the sheriff; there being no contention that the officers who drew the list of names from the jury box failed to list the names correctly, nor does the defendant charge any bias or prejudice on the part of any member of the grand jury. The rights of the defendant were not prejudiced. Therefore we hold that the action of the trial court in overruling defendant's motion to quash the indictment was proper. Gravitt v. State, 44 Okla. Cr. 45, 279 Pac. 968.

It is next urged by the defendant that the court committed error in overruling the demurrer to the indictment. The indictment contains sufficient facts to advise the defendant of the crime of which he stood charged, and the court did not commit error in overruling his demurrer to the same. Martin v. State, 35 Okla. Cr. 248, 250 Pac. 552; Scott v. State, 40 Okla. Cr. 296, 268 Pac. 312.

The defendant in the third assignment of error questions the sufficiency of the evidence to support the verdict and sentence. The evidence on the part of the state is, in substance, as follows:

The defendant was driving a Ford coupe along the public street in the city of Healdton, going in the direction of a town by the name of Wilson. The street on which he was driving was a paved street about eighteen feet in width. The accident occurred on the 18th day of November, 1926, about the noon hour. The deceased, Obera Holder, and a young boy by the name of Harrison Bray, were walking east along the paved street on their way to their respective homes from school. The deceased lived with her parents on a street that ran north and south and on the east side of the street about 15 feet from the intersection with a paved street running east and west on which the defendant was driving his car. At the time of the accident, the testimony tends to show the defendant, his wife, and a man by the name of Barney Roberts were riding in the seat together. Defendant was driving the car. The testimony further tends to show that the defendant crossed the Ringling Railroad at a point about 229 feet west of where he struck the deceased; that from where he crossed the railroad there was a gradual descent, and there was nothing to obstruct the view of a person driving along the highway in either direction. The testimony further tends to show that, after defendant crossed the railroad tracks going east, J. W. Harris, who was driving a water wagon, was driving along the street between defendant's car and where the deceased and her companion were walking, and, just before the defendant struck the deceased with his car, Harris turned south off of the street at a point about 143 feet east of the railroad crossing and 86 feet east of the intersection of the street run-

ning north and south and west of the home of the deceased; that the defendant passed Harris just as he turned to go into the yard, and in so doing turned his car over to the left or to the north side of the paved street; and that up to the time he struck the deceased he had not turned his car back to the south side of the street. Harris, who was driving the water wagon, testified that when he turned off of the street Miss Holder and Bray were about 80 feet east of him, walking along the concrete slab. The evidence further tends to show that, when the defendant's car struck the deceased, her body was thrown into the air and fell violently to the pavement approximately 15 or 20 feet east of the point where she was struck. Harrison Bray testifies, in substance, that the defendant was driving the car along the north side of the street, and did not sound his horn as he approached the intersection of the street, and that Miss Holder had almost crossed from the south to the north side of the street when the defendant's car struck her about 3 feet from the north edge of the pavement. The testimony as to the rate of speed the defendant was driving at the time he struck the deceased is conflicting. Where there is any competent testimony to go to the jury and the evidence is conflicting, this court will not attempt to weigh the evidence, but will leave that question to the jury's determination. In this case, the jury evidently believed the testimony of the witnesses for the state, as shown by its verdict, and, the jury having so decided, this court will not disturb the same. There is sufficient testimony to sustain the verdict of the jury.

The defendant in his fourth assignment contends that the court erred in the admission and rejection of the testimony offered, the admission and rejection of which was prejudicial to the defendant. An examination of the record shows that the court admitted, over the objections

of the defendant, the ordinances of the city of Healdton. The question to be determined is not the question as to whether or not the entire ordinances of the city of Healdton were material and relevant, but the question is whether or not the admission of the same prejudiced the defendant's rights and prevented him from having a fair and impartial trial. The admission of evidence not germane to the issue involved, but which in no way tends to show the guilt of the defendant, while not approved by the court, is not prejudicial error sufficient to warrant this court in reversing the case. The evidence offered must have prejudiced the defendant in order to warrant a reversal. Davis v. State, 15 Okla. Cr. 427, 177 Pac. 625; Waldon v. State, 16 Okla. Cr. 402, 183 Pac. 637.

An examination of the record shows that most of the instructions complained of are applicable to the law of murder or manslaughter in the first degree, of neither of which crimes was the defendant convicted; the defendant being convicted of manslaughter in the second degree. Taking the instructions of the court in their entirety, they substantially covered the law applicable to the facts in this case, and that the technical inaccuracies of which defendant complains did not militate against or prejudice the defendant and are not of sufficient merit to justify a reversal of this case. The action of the court in refusing to give instructions 2, 3, and 5, requested by the defendant, did not prejudice the defendant, as the court had substantially covered the points in his general instructions.

It is further urged by the defendant that the court erred in overruling his supplemental motion for a new trial based upon the ground of newly discovered evidence. The record discloses that, if the conversation took place between Harrison Bray and Bernice and Joseph Jenkins, it occurred shortly after the killing, and Everett Jenkins,

the father of the witnesses whom it is alleged had the conversation with Harrison Bray on the school grounds, was a witness called by the defendant in the trial, and, the father being called as a witness, it is apparent, if the children had the conversation alleged, the father must have known it before the trial. Further, it is apparent that this newly discovered evidence set out in the motion for a new trial, if of importance at all, is of such slight importance to this case as to have had no probable effect on the result of the trial. Under the showing made in this case, we do not think the court erred in overruling the supplemental motion for a new trial.

There are other errors in the record which are not necessary to mention, as they are not of sufficient merit to justify reversal of the case. The defendant had a fair and impartial trial. The court substantially instructed the jury as to the law applicable to the facts in the case.

Finding no reversible error, the judgment of the trial court is affirmed.

EDWARDS, P. J., not participating.

CHAPPELL, J., concurs.