# DELLIAH WILSON v. STATE.

No. A-9681.    Sept. 18, 1940.

(105 P. 2d 789.)

M. R. Tidwell, Jr., of Miami, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore,

Asst. Atty. Gen., and N. C. Barry, Co. Atty., of Miami, for defendant in error.

BAREFOOT, J. The defendant, Delliah Wilson, was charged by indictment of a grand jury in Ottawa county with the crime of manslaughter; was tried, convicted of manslaughter in the second degree, and sentenced to serve a term of six months in the county jail, and pay a fine of $500, and has appealed.

It is contended by defendant for reversal of this case:

First. The court erred in overruling defendant's request for a directed verdict, and in overruling defendant's motion in arrest of judgment.

Second. That the court erred in giving certain instructions to the jury.

In considering the first assignment of error it is necessary to review the evidence as shown by the record.

This indictment grew out of an automobile collision on the night of June 5, 1938. The collision occurred on U. S. Highway No. 66, in Ottawa county. Alfred Daniels, his wife, mother, and baby boy, Raymond Daniels, about two years of age, had left their home late in the evening of June 5, 1938, for the purpose of visiting his brother, who lived at North Center. About 10 o'clock that evening they started home. They drove south out of Picher to Connell avenue, where it intersected U. S. Highway No. 66. At this point he stopped his car for the purpose of permitting a car to pass, and then turned west on U. S. Highway No. 66. He had driven about a quarter of a mile west on said highway, when his car was struck from the rear by an automobile driven by defendant. The right front wheel of defendant's car struck the left rear wheel of his car. His car caught fire and completely burned. His son, Raymond Daniels, approximately two years of age,

was badly burned. From the effects of the burns he died at the hospital the next morning, as testified to by the physician who attended him. Mr. Daniels, his wife, and his mother were all injured at the time of the collision. Mr. Daniels further testified that he was driving on the right-hand side of the road, near the north side of the pavement. He was driving a 1932 Chevrolet two-door sedan, and was going about 30 or 35 miles an hour at the time his car was struck. Another car had just passed him going east at the time he was struck. He was knocked unconscious, and did not remember anything after the car was struck. He had examined the rear of his car at the time he left his brother's place, and the lights were burning. His wife, Elma Daniels, corroborated his evidence. Two other witnesses testified for the state: Coleman Parker and Claud Corbett.

Coleman Parker testified that he drove a beer truck out of Miami. On the night of June 5, 1938, he had been to Picher, Okla., and in coming back to Miami he followed the Alford Daniels car; that he stopped his car at U. S. Highway No. 66 to let the car of defendant pass. He testified that defendant's car was going at a pretty good speed; in his best judgment 40 miles an hour, or more; that approximately a quarter of a mile from where he turned on U. S. Highway No. 66, defendant's car ran into the Daniels car, which caught fire. He was behind the Wilson car at the time of the collision; that he drove to the scene, and with Mr. Corbett assisted in removing the injured from the car. He also testified that while he was following the Daniels car, the tail light was burning.

The witness Claud Corbett testified that he lived at Miami, and owned a garage; that on the night of the 5th of June, 1938, he was driving east on Highway No. 66, going to Joplin, Mo.; that his wife was with him; that he

passed the Daniels car and saw the car of defendant. It was going west and he was going east; that he was afraid defendant's car would not have room to pass the Daniels car, and he pulled over as far as he could to the side of the road. That defendant's car was traveling at a pretty good rate of speed; to the best of his judgment from 30 to 50 miles per hour; that just as he passed the cars he looked back through his window and saw defendant's car run into the back of the Daniels automobile, and the Daniels car burst into flames. He immediately turned around and drove back to the scene and helped to assist the injured. He first saw Mrs. Daniels, and then saw the injured baby on the floorboard of the car, with its clothing on fire. He picked the baby up, put out the fire, and handed it to his wife. He then assisted the others. He saw the defendant, Delliah Wilson, lying on the pavement. He and Coleman Parker attempted to load her in Parker's truck. He had a conversation with her at that time. He testified:

"Q. State that conversation to the jury? A. I asked Mrs. Wilson, if she was hurt, and if I could take her to the hospital; she said hell no, she wasn't in the damned wreck, and I left her alone. Q. Did she state where she wanted to go? A. And I went back and asked her to Jack Boystun's. Q. That is the night club out north of Commerce? A. That is where he is, and I don't know whether she wanted me to take her to his house or to that club."

He also testified that the Wilson car crossed the center line four or five times before it got to him.

Dr. W. G. Chestnut testified as to the injuries caused by the burns upon the body of the child, Raymond Daniels, and of its death on the following morning by reason of the injuries received.

Manslaughter in the second degree is defined by section 2228, Okla. Sts., 21 Okla. St. Ann., § 716, as follows:

"Every killing of one human being by the act, pro-

curement or culpable negligence of another, which, under the provisions off this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree."

In construing this statute this court has defined culpable negligence as the omission to do something which a reasonable and prudent person would do, or the doing of something which such a person would not do under the circumstances surrounding the particular case. Nail v. State, 33 Okla. Cr. 100, 242 P. 270; Sweet v. State, 68 Okla. Cr. 44, 95 P. 2d 242. In the case of Nail v. State, supra, this court has fully discussed the question of culpable negligence and has drawn the distinction between that term and the general term negligence, saying [33 Okla. Cr. 100, 242 P. 271] :

"The same negligence, as its affects the individual and the state, is, respectively, 'gross negligence' and 'criminal' or 'culpable negligence.' Between criminal or culpable negligence and negligence merely there is no principle of discrimination. It differs only in degree.

"The driving of an automobile upon the highway, with a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and thereby causing the death of another, establishes the crime of manslaughter in the second degree.

"Where a person, by culpable negligence in the operation of an automobile upon the highway by driving at an excessive speed, without regard for the safety of others, causes the death of another, it is not a defense that after he discovers the other person in danger caused by his own acts, he then did everything in his power to prevent injury to such other person. * * *

"There must be negligence rising to the degree of criminal or culpable negligence. The culpability of a defendant is a question of fact for the jury, and the test is: Do the acts charged as criminal show a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and did said acts cause the death of de-

ceased? If so, it establishes a case of criminal negligence." Clark v. State, 27 Okla. Cr. 11, 224 P. 738; Freeman v. State, 69 Okla. Cr. 64, 101 P. 2d 653; Philby v. State, 64 Okla. Cr. 1, 76 P. 2d 412.

Defendant, in her brief filed in this case, does not cite a single authority to support her contention, but says:

"We have read practically every case of this nature that has been passed upon by this court and in every one the defendant was flagrantly driving at a high rate of speed and under the influence of intoxicating liquor."

It is true that in many cases decided by this court, and where the driving of an automobile was involved, there was proof of intoxication, or that the parties involved had been drinking intoxicating liquors. In other cases there was no proof of the person involved having been under the influence of intoxicating liquors. Ansley v. State, 44 Okla. Cr. 382, 281 P. 160; Sprouse v. State, 52 Okla. Cr. 184, 3 P. 2d 918; Herndon v. State, 38 Okla. Cr. 338, 261 P. 378; Smith v. State, 46 Okla. 160, 287 P. 1103.

It may, however, be stated, that a violation of this statute does not depend on one being under the influence of intoxicating liquor at the time of its violation. One may be guilty of culpable and criminal negligence regardless of the fact as to whether he was drinking or not. An automobile in the hands of a person who handles the same in a reckless and careless manner, and in an utter disregard of the lives of others, is just as guilty under the statute as one who handles it while in an intoxicated condition. The degree of punishment may be different, but the guilt and responsibility is just the same.

The evidence in this case reveals that this defendant was not driving her automobile, as provided by the statute, at a careful and prudent rate of speed, such as would be reasonable and proper, and having due regard to the traffic and condition of the road, and in such a manner

and under such control that if danger appeared she could bring it to a stop within the assured clear distance ahead. Session Laws 1933, chapter 113, § 14, 47 Okla. St. Ann., § 92. The Supreme Court of this state has had occasion to construe this statute as applied to civil liability. Kurn v. Jones, 187 Okla. 93, 101 P. 2d 242; Miller v. Dobbs, 180 Okla. 576, 71 P. 2d 737; Vammen v. Kinsey, 181 Okla. 92, 72 P. 2d 497; Smith v. Clark, 125 Okla. 18, 256 P. 36; McGilvray v. Spaulding, 181 Okla. 570, 75 P. 2d 430.

The car in which the deceased child was riding was being driven by his father at a reasonable rate of speed. He was on the proper side of the road, and the lights on the rear of his car were burning. His first knowledge of danger was when he was struck by the car driven by defendant.

Defendant, according to the evidence, was driving at a fast rate of speed, estimated up to 50 miles an hour. She could see the lights of the car of the witness coming toward her, and according to the testimony of the witness Claud Corbett, he did not think she would have room to pass, and he pulled his car as far to the right as he could and to the edge of the pavement. The defendant, seeing her perilous position, and not having the car under proper control, drove into the back end of the Daniels car, and the child, Raymond Daniels, was killed, as shown by the evidence. If a gun is in the hands of a careless and reckless person, and he handles it in a careless and reckless manner, there can be no question of his criminal responsibility for his culpable act in the handling of the gun. While an automobile may not be a deadly and dangerous instrument in the hands of a careful and prudent person, yet when in the hands of one who handles it in a careless and reckless manner, without regard to the rights of others, it becomes a dangerous instrumentality. The great

number of high-powered automobiles upon the streets and highways of this state demand a respect for the rights of others, and a greater responsibility for those who drive them. It is too late to cry "accident" after one has been guilty of culpable and criminal negligence and others have been injured or killed. The time to think of this is before the collision occurs. Many citizens of this state will, no doubt, be prosecuted in the future, and be convicted, who had no intention of injuring or killing anyone. Why not "slow down" and "look and listen" before it is too late.

To convict one of manslaughter in the second degree, it is not necessary to show an intent to kill, but it is sufficient to show an unlawful killing. Franklin v. State, 9 Okla. Cr. 178, 131 P. 183.

We have examined the instructions given by the court in this case. They were fair and were more favorable to defendant than she was entitled to under the law. The court virtually required the jury to find defendant guilty of a misdemeanor before she could be convicted. If the crime had been committed while in the commission of a misdemeanor, she would have been guilty of manslaughter in the first degree under the statute. This was not necessary to be convicted of manslaughter in the second degree. It was only necessary to find her guilty of "culpable negligence," which the jury did, and assessed her punishment at a fine of $500 and six months in jail.

Under the decisions of this court, the defendant cannot complain of an instruction which was more favorable to her than that to which she was entitled.

The judgment of the district court of Ottawa county is hereby affirmed.

DOYLE, P. J., and JONES, J., concur.