Donna Raye HARLESS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-86-387.

Court of Criminal Appeals of Oklahoma.

Aug. 12, 1988.

Allen M. Smallwood, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., P. Kay Floyd, Asst. Atty. Gen., Oklahoma City for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Donna Raye Harless, was tried with co-defendant, Tony Davis, in the District Court of Tulsa County for the crimes of Injury to a Minor Child (Count I) and Murder in the Second Degree (Count II) in Case No. CRF–84–3218 and the jury returned a verdict of guilty on Count I and a verdict of guilty for the crime of Manslaughter in the Second Degree on Count II and set punishment at a five hundred dollar ($500.00) fine and three (3) months imprisonment in the county jail, respectively, and she appeals.

On August 25, 1984, a two year old child, Eric Cole Harless, was rushed into the emergency room of St. Francis Hospital in Tulsa, Oklahoma by appellant's husband, Tony Davis. The child, who displayed no pulse or heart beat, showed many signs of traumatic injury: a severely distended abdomen; numerous bruises; second degree burns on his hands and feet with bandages stuck to the burns; a third degree burn on the little finger of his left hand; and anemia. After the doctors determined that the child's abdomen was filled with blood, they operated and discovered a transected pancreas, some mild hermorrhage of the liver, inflammation of the stomach and colon, and old blood clots in the abdominal cavity. However, on August 31, 1984, Eric Cole Harless was pronounced dead, the cause of death being anoxic brain injury which resulted from a blunt injury to the abdomen.

The appellant and co-defendant, Tony Davis, were married on August 17, 1984, in Tulsa, Oklahoma. Prior to that time, they, along with appellant's two year old son, Eric Cole Harless, had been living together in Tulsa. Appellant testified that from August 17 until August 25, she worked from early morning until late evening every day and that Tony Davis was the primary caretaker for the child. At trial, Tony Davis offered explanations for the injuries suffered by the child, and appellant testified that Tony Davis told her about the child's fall and about his alleged accidental burning in hot bath water. Basically, appellant's defense was that the child did not show any unusual signs from his injuries other than the expected symptoms, and that since Tony Davis had received consid-

erable first aid or paramedic training, they decided to treat the burns themselves. However, four doctors testified at trial that the injuries were inconsistent with the explanations given by appellant and Tony Davis, and at least one of the doctors testified that he believed the injuries would have been survivable had the child been treated immediately.

■ For her first assignment of error appellant asserts that she was erroneously convicted of Second Degree Manslaughter due to a jury instruction, Oklahoma Uniform Jury Instruction—Criminal 463, which misdefined culpable negligence. The instruction which the trial court gave contains the following definition:

The term 'culpable negligence' refers to the omission to do something which a reasonably careful person would do, or the lack of the usual and ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions. (OUJI–CR 463).

Appellant contends that this definition is based upon a tort showing of ordinary negligence, and that the instruction does not require a finding of the appropriate degree of negligence prior to the imposition of criminal sanctions. Appellant's requested instruction at trial defining culpable negligence, provides that:

YOU ARE FURTHER INSTRUCTED that 'culpable negligence' is more than simple negligence. It is the failure to perform an act when the facts and circumstances justify certain action. It is negligence that evinces a carelessness and a recklessness amounting to a callous disregard for the life of the victim.

This Court has consistently upheld the definitional standard of culpable negligence which the trial court gave to the jury in the instant case. *See Thompson v. State*, 554 P.2d 105 (Okl.Cr.1976); *Crossett v. State*, 252 P.2d 150, 96 Okl.Cr. 209 (1952). Furthermore, the appellant's proffered instruction is not a proper instruction for the crime of Second Degree Manslaughter, rather it would be more appropriate in a case of Second Degree Murder. We hold,

therefore, that the trial court properly instructed the jury. This assignment is groundless.

■ Appellant next alleges that the trial court erred in admitting prejudicial photographs of the victim into evidence. She argues that the fifteen (15) photographic slides, depicting the body of Eric Cole Harless, were taken after extensive surgery had been performed on him following his admission to the hospital, and the slides failed to accurately reflect his appearance at the time he was taken to the hospital.

We first observe that appellant interposed a timely objection to the introduction of the photographs. However, Dr. Gheen testified that there were visible bruises prior to the surgery and that these injuries alerted him to initiate a procedure for suspected child abuse. Also, Dr. Dunlap stated that while his surgical procedures would cause discoloration, the bruising would be minimal.

Appellant further claims that the most egregious example of prejudice involved State's Exhibit No. 4 which depicted the burn on the little finger of the victim's left hand. She argues that the photograph depicted the finger as being black, while Dr. Gheen clearly stated that the blackness was caused by the length of time that the child had not received oxygen and that when Cole arrived at the emergency room it was not black on the end but just red. We find that the doctor's explanation of the reason for the blackness as well as his explanations concerning the other photographs was sufficient to clarify within the minds of the jurors the extent of the injuries depicted in the photographs. Consequently, we find that the probative value of the photographs is not outweighed by the danger of prejudice to appellant. *See Jacobson v. State*, 684 P.2d 556, 560 (Okl.Cr. 1984). The trial court did not abuse its discretion in admitting the photographs; thus, this assignment of error is without merit.

■ Appellant finally urges that a statement by the prosecutor at the end of her

closing argument was an intentional and unequivocal request that the jury's verdict should speak on behalf of the victim in this case. Appellant alleges that this single remark determined or affected the verdict of guilt. We disagree.

When the prosecutor asked the jury, "Would [sic] ask you at this time to speak out on behalf of Cole Harless," defense counsel immediately objected, and the trial court sustained the objection and admonished the jury not to consider the statement. Considering the evidence in this case, we find that this isolated comment was cured by the trial court's admonition and did not determine the verdict. *See Wimberli v. State*, 536 P.2d 945 (Okl.Cr. 1975); *Elvaker v. State*, 707 P.2d 1205 (Okl.Cr.1985). This contention is accordingly denied.

Finding no error warranting modification or reversal, the judgment and sentence is AFFIRMED.

PARKS, J., specially concurs.

BRETT, P.J., dissents.

PARKS, Judge, specially concurring:

I write separately to address the appellant's contention that the trial court's instructions defining "culpable negligence" were inadequate. The trial court used Oklahoma Uniform Jury Instruction No. 463, which is consistent with the definition approved by two members of this Court in *Thompson v. State*, 554 P.2d 105, 108 (Okla.Crim.App.1976). While this writer believes that culpable or criminal negligence should be specifically defined to require something more than mere ordinary or tort negligence, the Legislature has defined criminal negligence as "a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns." 21 O.S.1981, § 93. Consequently, I do not believe that this Court can redefine criminal negligence without improperly encroaching on the province of the Legislature. *See Matthews v. Powers*, 425 P.2d 479, 482–83 (Okla.Crim. App.1967). An analysis of the cases which

attempt to apply the concept of culpable negligence reveals the frustration that prior members of this Court have experienced in attempting to develop a working definition, and is evidenced by the Commission Comment to OUJI–CR 463 that "[a]lthough the definition merely articulates the tort standard concerning duty of care, the cases evince a more pronounced degree of culpability where a conviction for manslaughter in the second degree is affirmed." *Oklahoma Uniform Jury Instructions–Criminal* 105 (1981). Although this writer would strongly urge the Legislature to reconsider the current statutory definition of criminal negligence, which was originally adopted in 1910, and enact a standard which specifically provides that the standard of care for criminal negligence is higher than mere tort negligence, I feel compelled to defer to the wisdom of the Legislature, and therefore concur in the affirmance of appellant's conviction for the foregoing reasons.

BRETT, Presiding Judge, dissenting:

I agree with my colleague Judge Parks that the definition of "culpable negligence" is unsatisfactory. However, while it may be within the province of the Legislature to define the terms we use, this Court cannot abdicate its responsibility to strike down those terms when they violate provisions of the United States and Oklahoma constitutions. This writer believes such is the case here.

"Negligent" is defined in the criminal statutes:

The terms "neglect," "negligence," "negligent" and "negligently," when so employed, import a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns.

21 O.S.1981, § 93. This Court had occasion to interpret this statute over six decades ago. In *Nail v. State*, 33 Okla.Crim. 100, 242 P. 270 (1926), the Court said that the difference between simple negligence and criminal negligence depends on whether the subject matter demands reparation to

the individual or to the state. The Court then observed:

> Criminal negligence then is negligence in such circumstances that it imposes an obligation remissible by the state, but irremissible by the individual actually damnified by it; and since the state will not lightly intervene, **criminal negligence must be some "substantial thing" and not a mere causal inadvertance.** Between criminal negligence, however, and actionable negligence, there is no principle of discrimination, but a **question of degree only.**

*Nail,* 242 P. at 272 (emphasis added). The Court added that there must be negligence "rising to the degree of criminal or culpable negligence." *Id.* at 272–73. To aid in that determination, a test was enunciated: "Do the acts charged as criminal show a degree of carelessness amounting to a *culpable* disregard of the rights and safety of others, and did said acts cause the death of the deceased? If so, it establishes a case of criminal negligence." *Id.* at 273 (emphasis added). *See also Wilson v. State,* 70 Okla.Crim. 262, 105 P.2d 789, 791 (1940).

That "culpable negligence" was something more than civil negligence was re-affirmed in *Freeman v. State,* 69 Okla. Crim. 164, 101 P.2d 653, 663 (1940), where "culpable negligence" meant a "disregard of the consequences which may ensue from the act, and indifference to the rights of others. No clearer definition, applicable to the hundreds of varying circumstances that may arise, may be given."

New York, whose statutory definition of "negligence" was virtually identical to our own, wrestled with this problem six decades ago. "Culpable," the court said,

> is something more than a mere epithet; it suggests or indicates some such meaning as criminal, and its use was intended to mark a distinction of some sort between the negligence which is merely a tort, paid for by money damages, and the negligence which is a crime, an offense against society, which must be paid by penal punishment. The same negligent act may be both a tort and a crime, but there may be negligent acts that are torts, and not crimes.

*People v. Angelo,* 219 App.Div. 646, 221 N.Y.S. 47 (1927). The *Angelo* Court noted, as did the *Freeman* Court 13 years later, that there could be no precise definition of culpable negligence. The existence of the criminal element in each case is a matter for the jury, in view of all the facts. *Id.* In light of this, this writer would hold that the trial court in this case should add that "culpable negligence must be something more than [simple negligence], consisting of aggravated facts and circumstances which, in the opinion of the jury, demand criminal punishment rather than mere civil liability," *Id.* It must "involv[e] fault for which the state may demand punishment." *Brown v. Shyne,* 242 N.Y. 176, 151 N.E. 197, 199 (1926). *See also State v. Custer,* 129 Kan. 381, 282 P. 1071 (1929); *State v. Adams,* 359 Mo. 845, 224 S.W.2d 54 (1949).

Here, the trial judge determined that an instruction for Second Degree Manslaughter should be given. Appellant's counsel offered the following definition:

> YOU ARE FURTHER INSTRUCTED that "culpable negligence" is more than simple negligence. it is the failure to perform an act when the facts and circumstances justify certain action. It is negligence that evinces a callous disregard for the life of the victim.

The trial court refused, giving the standard uniform jury instruction: that the term "refers to the omission to do something which a reasonably careful person would do, or the lack of the usual and ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances." OUJI–CR 643. By way of contrast, the Oklahoma Uniform Jury Instructions (Civil) 9.2, defines negligence as follows:

> "Negligence" is the failure to exercise ordinary care to avoid injury to another's person or property. "Ordinary care" is the care which a reasonable careful person would act under those circumstances.... Thus, under the facts in evidence in this case, if a party failed to do something which a reasonable careful person

would do, or did something which a reasonable careful person would not do, such party would be negligent.

The similarity between the civil and criminal definitions is striking. Therein lies the problem. From this charge, I believe that the jury might well have obtained the impression that ordinary negligence met the test as to criminal culpability. I consider that to be impermissibly vague and a violation of due process under both the Fifth Amendment to the United States Constitution and Article II, § 7 of the Oklahoma Constitution. The facts of this case illustrate why.

There is little doubt that appellant owed a high duty of care to her infant. Likewise, there is little doubt that she exercised poor judgment in carrying out that duty. However, the facts indicate that her decision not to seek medical attention for second degree burns which were not a contributing cause of death was based on her financial situation and a belief that the injuries could be treated safely at home. She also indicated her belief that the child was recovering from a viral illness. Such conduct may or may not rise to the level of culpability, but that is not the point; under the instruction given, the jury could not make the determination whether the negligence was culpable or not.

The cases cited above and the facts of this case make it clear that there should be a higher standard than that set forth in the OUJI or defined in the statutes. To that extent, appellant was correct in requesting a different instruction. However, I think that the requested instruction's last sentence,—"[i]t is negligence that evinces a callous disregard for the life of the victim" —brings the standard almost up to the level of recklessness. That would be too high a standard.

Because the definition of culpable negligence is too vague as applied in this case, and is too close to civil negligence in any case, this writer would recommend to the legislature the better definition available for negligence, that set forth in the Model Penal Code:

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

*Model Penal Code* § 2.02(2)(d). To do more than recommend this definition to the legislature would be to infringe upon their duties, as this represents a sizeable deviation from the statutory definition that this Court has interpreted over the years. Therefore, I would not use it here, but would reverse and instruct the trial court to use the language set forth in the *Angelo* and *Brown* cases.

Accordingly, I dissent.