George Burton HOLLAND, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12023.

Criminal Court of Appeals of Oklahoma.

Sept. 24, 1954.

Harold McArthur, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error George Burton Holland, defendant below, was charged by information in the district court of Tulsa county, Oklahoma, with having committed the crime of manslaughter in the first degree on the 14th day of March 1953 in Tulsa county, Oklahoma, in that without premeditated design on his part so to do he did effect the death of Marie Marguerita Mott while engaged in the commission of a misdemeanor, driving and operating an automobile on Peoria Street in Tulsa at a high, dangerous and reckless speed then existing under the circumstances in passing another vehicle within an intersection and driving said automobile across the center line of the roadway, all of which things could not be done with safety and proper concern of the rights of the said Marie Marguerita Mott.

The information further alleged that in so driving said automobile he struck the body of Marie Marguerita Mott and ran the automobile over and across her body inflicting certain mortal wounds, from which said wounds she did die.

To the foregoing charge the defendant entered a plea of not guilty. Upon said plea he was tried by a jury, convicted of manslaughter in the first degree and being unable to agree upon the punishment left the punishment to the trial court. The trial court fixed the defendant George Burton Holland's sentence at 10 years in the State Penitentiary at McAlester, Okla-

homa; judgment and sentence was entered accordingly, from which this appeal has been perfected.

Briefly the facts herein are as follows to wit. On March 14, 1953 the defendant who was a resident of Bartlesville, Oklahoma, drove from Bartlesville to Tulsa with a view to visiting his children at his divorced wife's residence in Tulsa. En route he drove south on Peoria Street in the city of Tulsa. It appears that he got in behind a line of traffic which was led immediately in front of him by a large truck, he being the second car behind said truck. The truck was 21 feet and 9 inches long, the van of which was 12 feet in length and the bed was 7 feet and 4 inches wide. The van was covered with a tarpaulin which obscured the defendant's view. As the defendant approached the intersection at Peoria with 10th Street he pulled out of the line of traffic and undertook to pass at the intersection of 10th Street and Peoria where the traffic on 10th Street flowed from the east into Peoria which ran north and south. At this intersection 10th Street was a dead-end street because of the cemetery located on the west side of Peoria where 10th Street traffic flows into Peoria. The van in front of the defendant obscured not only his view of the oncoming traffic but his view of the pedestrian cross-walk from the west side of Peoria to the east side of Peoria at the south side of the intersection. As the defendant pulled to the left out of the lane and undertook to pass, the driver of the truck slowed down in order to permit the decedent Marie Marguerita Mott to cross the street from the west over to the east side of Peoria. The record shows, the defendant proceeded on past the truck and made no attempt to slow down or stop until after he had actually entered the intersection. The state's evidence produced through William Davis and H. D. Vierra shows that they were proceeding north on Peoria as they approached the intersection and that as the defendant proceeded across the intersection they were compelled to suddenly pull their automobile to the right or east side of Peoria and swerve toward the curb to avoid being hit by the defendant Holland as he proceeded south. The skid-marks produced by the defendant Holland's automobile show that he skidded almost the entire distance across the intersection. At the point where he struck the decedent Mott he released his brakes. She fell to the pavement and both wheels of his automobile ran over her. The defendant Holland did not stop but proceeded on southward on Peoria where he stopped at the stoplight and then made a left-hand turn, drove around several blocks and finally went to his sister's house where some two hours later he was arrested. The identity of his automobile was secured only because a woman driver procured the license from his automobile and gave it to the police. The evidence herein discloses that the defendant was driving at approximately 40 miles per hour when he proceeded around the truck in the intersection and that at the time he struck Marie Marguerita Mott he was driving approximately 25 miles per hour, and that as revealed by the skidmarks his automobile was straddling the center line of the street.

The defendant's defense was that there were no automobiles coming from the south at the time he proceeded around the truck. This evidence is clearly refuted by the testimony of William Davis and H. D. Vierra. His further defense was that the decedent was looking toward the southeast and stepped in front of his automobile and that her death was purely an accident.

The first contention of the defendant is that the trial court erred in refusing his requested instruction defining "assured clear distance ahead". The misdemeanor contained in the information upon which the charge is predicated consists of passing another vehicle within an intersection and driving said automobile across the center line of the roadway at an excessive rate of speed when such movement could not be made with safety. Only incidentally is the section involving "assured clear distance ahead" involved. The pertinent sections of the statute involved are as follows. Title 47 O.S.1951 § 121.4, par. (c), reads:

"(c) The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions

and special rules hereinafter stated: * * *

"(e) No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction, unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction, or any vehicle overtaken. * * *"

Subsection (i):

"(1) A vehicle shall be driven as nearly as practical entirely within a single lane until the driver has first ascertained that any other movement can be made with safety."

Title 47 O.S.1951 § 121.3, reads:

"(a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than, nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead * * *.

"(j) It shall be deemed reckless driving for any person to drive a motor vehicle in a careless or wanton manner without regard for the safety of persons or property or in violation of the conditions outlined in paragraph (a).

"Every person convicted of reckless driving shall be punished upon a first conviction, * * *."

Thereafter follows provisions for punishment both by imprisonment and for fines in varying degrees for first and second or subsequent offenses.

█ Title 21 O.S.1951 § 711, defining manslaughter in the first degree provides that homicide is manslaughter in the first degree first, when perpetrated without design to effect death by a person while engaged in the commission of a misdemeanor. In support of the contention that the court should define the term "clear distance ahead" the defendant cites no authority where a criminal charge was involved. He cites only the case of Taylor v. Ray, 177 Okl. 18, 56 P.2d 376, wherein the term "assured clear distance ahead" is discussed, but nowhere therein does it appear that any suggestion is made that an instruction should be given defining the term. We do find that it is said:

"Nor should we overlook the fact that just what is a 'clear distance ahead' must in practice vary with almost every case, and that this is a question of fact. The length of headlight beams has, of course, nothing to do with it in day driving and is not all-controlling in night driving, when it is constantly shifting in accord with the turns in the road and the suddenness thereof, or ascent or descent of the roadway, the presence of other traffic, or the fact of blinding headlights from the opposite direction, as well as a score of other factors. The clear distance of visibility may change suddenly from a long distance to virtually none at all, and vice versa."

With this conclusion we are highly in accord. We are of the opinion that any definition of the term would in effect resolve itself into a comment on the evidence. Moreover the term "assured clear distance ahead" is like such term as reasonable doubt which because of its special significance we have repeatedly held need not be defined in the instructions. Wallace v. State, Okl.Cr., 250 P.2d 484; Moore v. State, 90 Okl.Cr. 415, 214 P.2d 966. Any attempt to define a term the meaning of which within itself is clear would only tend to confuse. Hence for the foregoing reasons it was not error to refuse the defendant's requested instruction defining the term "assured clear distance ahead".

█ Defendant next contends that the court erred in giving instruction No. 8 in that said instruction did not include the element of proximate cause. Instruction No. 8 deals entirely with second degree man-

slaughter by reason of culpable negligence. The jury did not find the defendant guilty of second degree manslaughter hence the error complained of is therefore immaterial. However in instructions 11, 12 and 15 relating to manslaughter in the first degree and manslaughter in the second degree, the court fully and definitely instructed the jury on the proposition of proximate cause. In this connection it has been repeatedly held that the instructions must be considered as a whole and when so considered together if they fairly and correctly state the law applicable to the case they will be sufficient. Lamb v. State, 70 Okl. Cr. 236, 105 P.2d 799. The instructions when so considered in the case at bar sufficiently state the proposition that the violations of law complained of must be the proximate cause of the manslaughter charged to sustain a conviction.

■ The defendant further contends that the trial court erred in not instructing on his theory of the case, that the homicide was accidental. Under the facts of the case we are not impressed but in any event if additional instructions were desired it was the duty of the defendant's counsel to reduce the desired instruction to writing and request the giving thereof, and in the absence of such request a conviction will not be reversed unless the Criminal Court of Appeals believe in light of the entire record and instructions the defendant was deprived of substantial rights. Taylor v. State, 94 Okl.Cr. 368, 236 P.2d 270. We do not believe the facts warranted such an instruction, for the record clearly shows and the jury found that the homicide was the result of clear violations of law and not that of an accident. This contention is therefore without merit.

■ Finally, the defendant contends that the evidence is insufficient to support the verdict. The evidence discloses that the defendant was driving at an excessive rate of speed while passing in an intersection against approaching traffic which was compelled to pull to the curb to keep from being hit while the decedent was crossing the intersection in a crosswalk where she had a right to be when the defendant struck her with his automobile. This evidence clearly presented an assignment of facts for the determination of the jury, and there is sufficient evidence in our opinion to sustain the jury's finding.

■ The record discloses that a penalty of 10 years in the penitentiary was imposed under the provisions of Title 21 O.S.A.1951 § 715. We cannot say that in light of the defendant's prior convictions of unlawful transportation of liquor and conviction for drunken driving, when combined with his flight from the scene of the crime and his attempt to avoid identification, that the penalty imposed is too severe. Nevertheless there are matters of mitigation appearing in the record which compel us in the interest of justice to modify the judgment to 8 years in the Penitentiary. For all the foregoing reasons the judgment and sentence, as so modified, is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.