Margaret C. MOORE, Executrix of the Estate of Ralph E. Colvin, deceased, Appellant,

v.

Joyce Jolene STRONG, individually and as surviving spouse and next-of-kin of Johnny Ray Strong, deceased, Appellee.

Roy WEEKS and Angelo Napoli, Appellants,

v.

Joyce Jolene STRONG, individually and as surviving spouse and next-of-kin of Johnny Ray Strong, deceased, Appellee.

Nos. 8040, 8041.

United States Court of Appeals Tenth Circuit.

May 5, 1966.

Charles Vance, Liberal, Kan. (H. Hobble, Jr., Chester A. Nordling, Gene H. Sharp and Kerry McQueen, Liberal, Kan., Edgar Fenton, Elliott C. Fenton, Wm. G. Smith and John B. McCaleb, Oklahoma City, Okl., with him on the brief), for Margaret C. Moore.

John M. McPherren, Oklahoma City, Okl. (Foliart, Shepherd & McPherren, Oklahoma City, Okl., with him on the brief), for Roy Weeks and Angelo Napoli.

John R. Couch, Oklahoma City, Okl. (Calvin Hendrickson of Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, Okl., with him on the brief), for Joyce Jolene Strong.

Before PICKETT, BREITENSTEIN and HILL, Circuit Judges.

PICKETT, Circuit Judge.

This litigation arose out of a multiple vehicle collision on U.S. Highway 54, about six miles east of Guymon, Oklahoma, in which a Cadillac automobile, driven by Ralph E. Colvin, a Chevrolet driven by Johnny Ray Strong, and a truck owned by the defendant Napoli were involved. Joyce Jolene Strong sued to recover compensatory damages for injuries to herself, and for the wrongful death of her husband, who was killed in the accident. Two minor children of the Strong family were injured, and a third was killed. The complaint alleges that the injuries were the result of the negligence of the several defendants. Separate appeals were taken from the judgment entered upon the jury verdicts in favor of the plaintiff. The principal error assigned by each appellant is that the evidence was insufficient to sustain the verdict.

Between 7:00 and 7:30 on the evening of June 16, 1963, the Strong family was traveling westward on Highway 54 in a Chevrolet automobile. The day was cloudy, with considerable rain, but it was not yet dark. The asphalt pavement of the highway was wet. A Studebaker Lark station wagon, driven by Thomas A. Peabody, was traveling westward in front of the Strong vehicle. Following the Strong car was a large truck and trailer combination with a total overall length of approximately 50 feet and a gross weight of 65,000 pounds, driven by defendant Roy Weeks, an employee of the defendant Angelo Napoli. The speed of both the Lark and the Strong automobiles was from 50 to 55 miles per hour. The three vehicles were on a downhill slope, with clear vision ahead. As a Cadillac automobile, driven in an easterly direction by 77 year old Ralph E. Colvin, was about to meet and pass the Lark station wagon, there was a collision described as a "side-swipe." The motor hood of the Cadillac flew up, and the car swerved into the lane of westbound traffic, colliding head-on with the Strong car with such force that the Strong car was stopped and carried backward 11½ feet from the point of impact. The speed of the Cadillac was estimated at from 70 to 75 miles per hour at the time it side-swiped the Lark, and at 60 miles per hour

when it collided with the Strong Chevrolet. Almost immediately the Napoli truck collided with both automobiles. The Chevrolet was pushed westward and came to rest north of the highway, approximately 45 feet from where it was first struck by the truck. The Cadillac was carried 109 feet to the west before the truck and trailer went off the road on the south side and turned over facing east. The Cadillac continued an additional 168 feet after separating from the truck. Colvin and his wife were killed. It is quite evident from the record that the Strong car was between two powerful forces traveling in opposite directions, and helpless. There is no suggestion that Strong was negligent in any manner, and the amount of the verdict is not questioned. The trial developed into a contest between the Colvin Estate and the owner and driver of the truck as to whose negligence was the proximate cause of the injuries, with the additional claim of the Colvin Estate that the real culprit was the driver of the Lark.

The court instructed the jury that where the negligent acts of two or more persons concur and contribute to cause injury and damage, every person whose negligence proximately contributed to cause the injury and damage is liable to the injured person for the full amount of the damage if such negligence proximately contributed to the injury. The jury was told that such liability was not affected even if it should appear that some other person was negligent and that such negligence proximately contributed to the injury and damage. No exception was taken to this instruction, and its applicability is not questioned by any of the appellants.

Driving a motor vehicle on the wrong side of the road is a violation of the Oklahoma statute and prima facie evidence of negligence which can be overcome only by showing that under the circumstances the violation was excusable and due to something other than the negligence of the driver. 47 Okl.St.Ann. § 11–301; Smittle v. Illingsworth, Okl., 373 P.2d 78; Clark v. Hawkins, Okl. 321 P.2d 648; Garner v. Myers, Okl., 318 P.2d 410; Woods v. United States, 10 Cir., 228 F.2d 734. Whether a person who drives a vehicle on the wrong side of the road is always at fault depends upon the circumstances of each case and usually presents a question for the jury. Rosamond v. Reed Roller Bit Co., Okl., 292 P.2d 373. To overcome the presumption of negligence the Colvin Estate urges that Colvin was without fault in driving the Cadillac into the opposite lane of traffic, because his vision was suddenly obstructed by the upward movement of the hood of his car, occasioned by the negligence of a third party. There is nothing in the record to indicate that after Colvin's vision was obstructed by the raised hood he could not have kept to the right of the center line of the road until he could bring his car to a stop. This issue was squarely presented to the jury by the court's instructions. Furthermore, there was evidence from which it could be inferred that Colvin was not free from negligence in the collision with the Lark. The circumstances indicate that the Colvin automobile was being driven at a high rate of speed. The lowest estimates were from 70 to 75 miles per hour. There was evidence that his car was over the center line of the highway when the "side-swipe" occurred.[1]

Appellants Napoli and Weeks assert that the record as a whole fails to show any negligence on the part of Weeks, driver of the truck. Weeks estimated that he was traveling from 125 to 150 feet behind the Strong Chevrolet immediately before the accident, which, in his opinion, was a distance in which he could have safely stopped the truck had the Chevrolet been brought to a stop in the normal manner. That is, by the application of its brakes. Weeks thus

---

1. In addition to Peabody's testimony that the Cadillac was over the center line of the highway, a highway patrolman testified that material on the highway, including a door handle from the Cadillac, indicated that the collision had occurred near the center of the highway.

asserts that he could not reasonably anticipate the collision between the Cadillac and the Chevrolet, which not only suddenly blocked the west lane of traffic, but also reduced the distance between the Chevrolet and the oncoming truck. The Oklahoma statute, 47 Okl.St.Ann. § 11–801(a), requiring motor vehicles to be operated on highways at a speed which will permit the driver to bring it to a stop "within the assured clear distance ahead" is not inflexible. The statute is to be given a reasonable meaning, and its application contemplates a lawful use of the highway by all drivers of vehicles thereon. Ordinarily, a driver is not bound to anticipate the negligence of another. Griffeth v. Pound, Okl., 357 P.2d 965; Kraft Foods Co. v. Chadwell,, 207 Okl. 379, 249 P.2d 1002; Taylor v. Ray, 177 Okl. 18, 56 P.2d 376. The record is clear that the collision between the Cadillac and the Chevrolet created an emergency for Weeks, but we cannot agree with the contention that there was no evidence of negligence on his part. Weeks testified that he did not see the actual collision between the Cadillac and the Lark, that he first recognized danger when he saw them "dart apart" approximately 540 to 550 feet away. He stated that he immediately went to his brakes, and when "everything seemed normal again" he went back to his accelerator. Weeks testified that the Cadillac continued on its side of the road until about 50 feet from the Chevrolet, when its hood flew up, and that it then swerved hard to the left" into the Strong vehicle.[2] Weeks thought he was about 240 feet away when the hood of the Cadillac opened.[3] He also testified that he immediately applied the brakes hard and steered the truck onto the right shoulder of the highway in an attempt to miss the vehicles which, he said, were coming "toward him." He then released some of the pressure on his brake pedal, turning sharply to the left in an attempt to avoid the Strong automobile, which he said was moving to his right in front of him. The only skid marks made by the application of the truck's brakes were those of its right rear wheels, which began 204 feet east of the point where the Cadillac and Chevrolet collided. There was no evidence on the highway which would indicate that Weeks ever made full use of the truck's brakes. The speedometer of the truck was not functioning, but Weeks estimated the speed of his truck did not exceed 50 miles per hour. There was other evidence that the speed of the truck for some time prior to the accident did not exceed 50 miles per hour. Highway patrolmen who investigated the accident estimated that the truck's speed was from 50 to 55 miles per hour. A passenger in an automobile traveling behind the truck for some distance thought the

2. In a statement taken shortly after the accident, Weeks said that the hood of the Cadillac "Blew up when it hit the second car." Weeks explained this with a statement that the reporter who took the statement "misworded it."

3. In response to questions by the court, Weeks gave this testimony:
"The Court: Could your truck under those conditions have stopped in 240 feet? A. Confronted with the highway like it was, if I had tried to stop on a— I don't know exactly what you want to know, Judge. I mean, I could have stopped under normal conditions when everybody else was stopping.
The Court: Well, could your truck at that time have stopped under the conditions that existed in the 240 feet that you way is when you saw the wreck was imminent? A. Well, I just don't know for sure. I don't want to be wrong about it. I don't know whether it could or not. I just didn't—I didn't. The way everything happened. I didn't.
The Court: What's your opinion about it? A. Well, if I had been just going to stop at the speed I was going, I could have stopped in less than 240 feet, if I had been just going to stop normally.
The Court: Well, did you— A. (interposing) Just like I say, well I want to stop down here at this place, at the speed I was going, it wouldn't have took 240 feet, actually to stop.
The Court: Then you could have stopped after you saw there was going to be the wreck if you had just decided to stop instead of doing what you did? A. If I had recognized the wreck was going to happen."

speed was about 60 miles per hour. The speed limit for trucks in that area was 50 miles per hour. One of the officers testified that in his opinion, under the existing conditions, the truck could have been stopped within 175 to 180 feet. There was expert testimony that the average "braking distance" of a like semi-trailer combination under the conditions existing in the area of the collision would be about 354 feet, exclusive of reaction time required to set the brakes. Weeks estimated that when his truck struck the Chevrolet, he was traveling about 10 miles per hour, yet his truck, after clearing the road of the Chevrolet, continued to push the Cadillac on an additional 109 feet before it left the highway and turned over on its side facing east, and the Cadillac, with its left front wheel demolished, was propelled an additional 168 feet, or a total of 277 feet from the point where it was first struck by the truck. From this evidence, the jury might well conclude that the truck was being driven at an excessive rate of speed, in violation of the state statute; that it was traveling too close to the Chevrolet;[4] and that the truck driver was negligent in his handling of the truck after the danger became evident.

■■ The Colvin Estate asserts that the "heart of its defense" is that Colvin's negligence was not the cause of the collision between the Cadillac and the Lark station wagon which threw the Cadillac out of control and into the path of the oncoming Strong Chevrolet. This is an over-simplification of the issue of negligence on the part of Colvin. There is no evidence that the Lark was over the center line of the highway or that its driver was negligent. A highway patrolman found material on the surface of the road which indicated that the collision between these two automobiles occurred near the center line of the highway. He was,

however, unable to determine which vehicle was over the center line. Although Peabody, the driver of the Lark, had made previous statements indicating that at the time of the collision he did not know the exact location of his car with reference to the center line of the highway, at the trial he testified that the Cadillac was from 12 to 18 inches over the center line of the road when the "side-swipe" occurred. For the purpose of impeachment, Peabody's former statements and his deposition were offered. The question of impeachment is for the jury. Brooks v. United States, 10 Cir., 309 F.2d 580. Assuming that Peabody's testimony as to the relative positions of the two automobiles at the time of the first collision were impeached, it does not affect the undisputed evidence that the Colvin automobile was on the wrong side of the road and traveling at a high rate of speed when it collided with the Strong car. The record does not disclose that the obstruction of Colvin's vision by the rising of the motor hood was an excuse for abruptly turning his car into the westbound lane of traffic and directly into the Strong Chevrolet, and does not destroy the presumption of negligence, but at most, leaves a jury question. Clark v. Hawkins, supra; Garner v. Myers, supra.

■ For different reasons, the appellants assert that they were deprived of a fair trial, and that the case should be remanded for a new trial. The Colvin Estate, generally, relies upon an accumulation of numerous errors committed by the trial court in the admission of evidence. We interpret its contention to be directed to the testimony of two officers of the Oklahoma Highway Patrol, wherein they, relying upon physical facts, hearsay evidence and statements of witnesses, were permitted to reconstruct the accident and give their opinions as to what

4. 47 Okl.St.Ann. § 11–801(a), provides:
 "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

occurred. From the beginning of the trial, it appears that all parties assumed that under Oklahoma law, opinion evidence of highway patrolmen, if they qualified as experts, is admissible. Groninger & King, Inc. v. T. I. M. E. Freight, Inc., Okl., 384 P.2d 39. See, Ruther v. Tyra, 207 Okl. 112, 247 P.2d 964; Andrews v. Moery, 205 Okl. 635, 240 P.2d 447. The record is replete with the admission of hearsay evidence and conclusions of the investigating officers, most of which resulted from the examination of these officers by counsel for Napoli and Weeks, but under the circumstances of this case and the court's instructions, we do not think it was prejudicial to the Colvin Estate.[5]

▮ Appellants Napoli and Weeks, also relying upon an accumulation of alleged occurrences, contend that they were deprived of a fair trial by the hostile and partisan attitude of the trial court. We find no merit to this contention. The record shows that from the beginning of the trial there was unnecessary bickering and recrimination between counsel and the court, resulting principally from the conduct of counsel for Napoli and Weeks. This led to numerous conferences at the bench and in the Judge's chambers, and greatly prolonged the trial. Although it is obvious that the court was irritated—and understandably so—the matters were disposed of with restraint, especially in the presence of the jury. To sustain their position, counsel emphasizes a statement made by the court in chambers to the effect that it appeared from Weeks' deposition that he was grossly negligent in the operation of the Napoli truck. There is nothing in the record which indicates this impression was conveyed to the jury. The trial climate, whatever it was, resulted from counsel's own conduct.[6]

▮ Complaint is made that the court's questioning of witnesses and comments when ruling on objections to the admission of evidence were fashioned to prejudice the defendants Napoli and Weeks. In the course of the trial the court propounded questions to several witnesses. In most of the instances complained of, the questions were pointed, and tended to develop material clarification. For this purpose, the presiding judge has not only the power but the duty to elicit the truth. Ayash v. United States, 10 Cir., 352 F.2d 1009; Jordan v. United States, 10 Cir., 295 F.2d 355, cert. denied 368 U.S. 975, 82 S.Ct. 479, 7 L.Ed.2d 438. It is true that in numerous instances when objections were made to evidence offered by Napoli and Weeks, the court commented to the effect that he thought the objections were good "but I am going to let him answer." In most instances these rulings were favorable to Napoli and Weeks, and we do not think the comments prejudicially influenced the outcome of the litigation, nor did they affect the substantial rights of any of the parties. While a judge should conduct a trial impartially and should not become an advocate for one party or mislead the jury, United States v. Sowards, 10 Cir., 339 F.2d 401, we think the language used by this court in Union Carbide and Carbon Corp. v. Nisley, 300 F.2d 561, 586, dismissed, Wade v. Union Carbide and Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46, is a complete answer to the objection here:

"There are, to be sure, instances in the record in which the trial court indicated with some emphasis his view of the evidence, and even a critical atti-

---

5. The court instructed the jury that "statements and admissions made prior to the trial by the Defendant Weeks and by Tom A. Peabody, driver of the red Lark car * * * are not binding upon the Defendant Moore and may be considered by you only in the determination of the issues in this case between the plaintiff and the Defendants Weeks and Napoli, but are not to be considered for the determination of the issues between the plaintiff and the Defendant Moore."

6. When a motion for new trial was presented, the court stated that counsel had been disrespectful of the court and guilty of contempt and that the matter would be referred to the Bar Association for action.

tude toward counsel for appellants. And, it may be fairly said from the tenor of the whole record that the jury was impressed with the views of the court concerning the merit of the plaintiffs' case, and the demerits of the defendants' case. But, as we have recently said, 'a judge presiding over a * * * federal court is not a mere umpire. He has both the responsibility of assuring the proper conduct of the trial and the power to bring out the facts of the case.' Jordan v. United States (10 CA–Sept. 1961), 295 F.2d 355. To that end, an expression of the court's views with respect to the evidence and conduct of counsel within proper limits is permissible, provided the jury is given to understand that they are free to form their own opinion of the facts and apply them to the law."

Furthermore, the court instructed the jury that it had not intended to express an opinion as to the merits of the case either by action or words, and that the jury was the sole judge of the facts.

Finally, it is contended that there is a total lack of evidence to show that the collision between the truck and the Chevrolet contributed in any manner to the injuries of Mrs. Strong or the death of her husband. When the Strong car collided with the Cadillac, it was turned counter-clockwise and was facing to the southeast, diagonally across the highway in the westbound lane of traffic, where it was struck by the truck. There was evidence that the front bumper of the truck struck the Chevrolet near the left front door. Although the head-on collision with the Cadillac occurred first, the collision with the truck was almost simultaneous. Following the second collision, the Chevrolet came to rest off the highway to the north and a substantial distance from where it had been struck by the truck. Referring to the injuries to Mrs. Strong, a medical doctor testified:

"These injuries were caused by tremendous forces. They are injuries that could be caused by head-ons; they are injuries that could be caused by collisions involving an automobile and a standing object; they are injuries that can be caused by an automobile being hit from the side and the patient being thrown against the side of the car in a centrifugal movement, so I feel my position is one of being able to state that they are injuries manifesting tremendous force, destructive power, which are brought on by momentum in weight and could be manifestations of most any type of injury of an individual within a car."

It is the law of Oklahoma that if injuries to a third person result from the concurrent negligence of two or more persons they are jointly and severally liable to the third person, who may recover his damages against all whose concurrent negligence is the proximate cause of his injuries. In Harper-Turner Oil Co. v. Bridge, Okl., 311 P.2d 947, 952, the court said, after citing cases:

"These cases are merely illustrative of the well established rule in this jurisdiction that where persons are guilty of separate and independent acts of negligence which combine to produce directly a single injury, the courts will not attempt to apportion damage, especially where it is impracticable to do so, but will hold each joint tort-feasor liable for the entire result."

See, Missouri-Kansas-Texas R.R. Co. v. Ingram, 10 Cir., 322 F.2d 286; Cole v. Anderson, Okl. 304 P.2d 295; Maddux v. Donaldson, 362 Mich. 425, 108 N.W.2d 33, 100 A.L.R.2d 1. The liability of Napoli and Weeks was properly submitted to the jury on the question of whether the negligent operation of the truck proximately contributed to the death of Strong and the injury to Mrs. Strong.

Affirmed.