**Johnny WOLFENBARGER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17195.**

Court of Criminal Appeals of Oklahoma.

Feb. 21, 1973.

Rehearing Denied April 12, 1973.

Warren H. Crane, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Johnny Wolfenbarger, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Stephens County for two offenses of Robbery With Firearms. His

punishment was fixed at thirty (30) years imprisonment, Case No. CRF–71–70, and twenty-five (25) years imprisonment, Case No. CRF–71–71, the last fifteen (15) years of the sentence imposed in Case No. CRF–71–70 to run concurrently with the first fifteen (15) years of the term assessed in CRF–71–71 and from said judgments and sentences, a timely appeal has been perfected to this Court.

At the trial Clarence "Tiny" Wright testified that on March 21, 1971, he lived at 412 Oak in Duncan, Oklahoma. On March 20, 1971, he was in the defendant's pawn shop in Lawton. He testified that he had known the defendant approximately seven or eight years. While in the pawn shop, the defendant asked him about the sale of a lounge he previously owned and commented, "Well, I heard you got $10,000.00 for it." (Tr. 12) The defendant asked his wife, Rosemary, to look at a diamond ring which he was wearing. The ring was a seven diamond cluster, containing a little over three carats. Wright had purchased the ring from the defendant several years prior. The defendant asked him if he was interested in selling it back and Wright replied in the negative. While Wright was in the pawn shop, he had approximately $7,800.00 in cash in his right front pocket.

At approximately 10:15 p. m. on the following evening, he noticed a car pull into his driveway. He got up and looked to see who it was and the car backed out and drove away. In approximately ten minutes, the same car returned and drove into the driveway. Wright unlatched the storm door to see if he could help the persons in the car. The man from the car pulled the door open and suddenly three armed men entered his home. They grabbed Wright, handcuffed him, and threw him to the floor. They took a spread from a nearby couch bed and attempted to cover him up. They went into his wife's bedroom and "told her to shut up, nobody was going to get hurt." She asked them what they wanted and they said "money." She stated that the money she had was in her purse. One of the men came back into the room where he was lying on the floor and struck Wright in the head with a .38 caliber revolver. Wright pretended to be knocked out and the man reached inside his front pants pocket and removed his money. While Wright was lying on the floor, he had turned the diamond ring around so that it looked like a wedding ring. The robber reached down to open his hand and said, "give me that ring." (Tr. 21) He identified the robbers as Co-defendant Bell, Co-defendant McCoy, and Co-defendant Urbin. His mother-in-law was awakened by the commotion and was forced to get in bed with his wife, Dorothy, by the men. One of the men said, "you'd better find that little girl." Shortly thereafter they stated, "let's get the hell out of here, the little girl's gone." (Tr. 29) The men tore the headboard from a bed which was blocking the back window and exited through the window. Wright immediately went outside to get help and observed a police car with two officers in it, parked in front of his house. He told them what had just transpired and they radioed for assistance. The officers subsequently removed the handcuffs from Wright's wrists. He testified that approximately $8,000.00 and the diamond ring was taken from his person and approximately $2,500.00 was taken from his wife.

Defendant Delbert Urbin testified that on the afternoon of March 21, 1971, he, Defendant McCoy, and Defendant Bell left Wichita, Kansas, and drove to Lawton. He testified that they were going to pull a "holdup of some kind" and that he was supposed to receive about $2,500.00. They arrived in Lawton at approximately 6:30 to 7:00 and proceeded to the defendant's pawn shop. Defendants McCoy and Bell went into the shop and stayed approximately thirty minutes. The defendant returned to the car with Defendant McCoy and Defendant Bell and they drove to Duncan. Upon arriving in Duncan, the defendant directed them to the home of "Tiny" Wright. The defendant informed them that Wright had recently sold a club and had about $10,000.00 in cash in his

pocket and that he had a diamond ring. They drove around the house two times and then returned to Lawton. Arriving at approximately 8:30. Defendants McCoy and Bell went into the pawn shop and he purchased gas at a nearby Texaco service station using McCoy's credit card. He signed McCoy's name to the ticket. He picked up Defendants McCoy and Bell and they drove back to Duncan. They proceeded to Wright's house and he pulled into the driveway; but upon seeing Wright looking out the door, they drove off again. He left Defendants Bell and McCoy about a block from the house and returned to the residence and pulled in the driveway. He went up to the house and Wright opened the door; he was grabbed and they all went into the house. He testified that they were all armed, because the defendant had advised them that Wright was known to keep a weapon in the house. He took the money from Wright's wife and Defendant Bell took the money and ring from Wright. Upon realizing that the little girl was missing from the house, the three escaped out of a rear bedroom window and ran down the alley into a creekbed. Defendant Bell was arrested near a filling station and he and Defendant McCoy were arrested near the creekbed.

Marion Smith testified that on March 21, 1971, he was employed at a Texaco service station located approximately four blocks away from the defendant's pawn shop in Lawton. He identified State's Exhibit No. 13, a credit card invoice signed by Glen McCoy which he filled out on the day in question.

Mary Sturns testified that she lived at 412 Oak in Duncan, with her daughter, Dorothy. On the evening in question, she was almost asleep when she heard a commotion. She got up and was ordered by gunpoint to go to her daughter's room and to get in bed. The man said that this was a robbery and they wanted the money. Shortly thereafter one of the men said that the little girl was gone and the men left through the back window.

Officer Taylor testified he assisted in the arresting of Bell, McCoy and Urbin. He found approximately $3,100.00 in the immediate area of the arrest.

Officer Rue testified that at approximately 10:37 p. m. on the evening in question he answered a call to 413 Oak, which was across the street from "Tiny" Wright's residence. He observed Wright run to the patrol car with his hands handcuffed behind him. He identified State's Exhibit No. 9 as the handcuffs he removed from Wright.

Detective Foster testified that he arrived at the scene at approximately 11:00 p. m. He and another officer searched the creekbed area and found a pair of coveralls, two rolls of adhesive tape, a hat, a billfold, and a Walther 7.65 millimeter automatic. He subsequently searched a 1969 Ford LTD with Kansas license plates and found State's Exhibit No. 23, a handcuff box lying on the back floorboard.

Perry Brown testified that he owned and operated Mac's Grocery which was located just across the street from the defendant's pawn shop in Lawton. At approximately 6:30 p. m. on March 21, he sold the defendant's wife two rolls of tape similar to State's Exhibits No. 19 and 20, which were found in the creekbed.

Ron Rutledge testified that he was employed as a detective with the Lawton Police Department. That on March 28, he went to the defendant's pawn shop and purchased a pair of handcuffs. He identified the handcuffs and the box in which they came.

Defendant James Bell's testimony did not differ substantially from the testimony of Defendant Urbin. He testified that he had obtained the handcuffs and the rolls of tape at the defendant's pawn shop. He did not intend to leave the handcuffs behind because of the serial number.

Dorothy Chandler testified that she was the common law wife of "Tiny" Wright. Her testimony as to the account of the robbery did not differ substantially from Wright's testimony.

Defendant McCoy testified on the afternoon of March 21, he received a message at his parents' home in Wichita, Kansas, to call the defendant, his father's telephone number being AM–20987. He called the defendant and the defendant stated that if he was coming down that way to stop and to bring Jim Bell with him. He picked up Defendant Bell and Defendant Urbin and drove to Lawton, arriving at approximately 7:00. He and Defendant Bell went into the pawn shop and talked to the defendant. Approximately 20 or 30 minutes later, the defendant accompanied them to Duncan and pointed out Weldon Wright's house. The defendant said that Wright had sold a club and had about $10,000.00 cash. They returned to Lawton and he, Defendant Bell, and the defendant went into the pawn shop. Defendant Urbin filled the car up with gas using his (McCoy's) credit card. He testified that they were supposed to split the take four ways. After he was arrested, he called the defendant on two occasions collect and the defendant accepted the calls.

Jim Woods testified that he was employed as Manager of the Duncan office of Southwestern Bell Telephone Company. He identified telephone company records he obtained from the offices in Wichita, Kansas, and in Lawton. The records adduced that on March 21, at 2:11 p. m., a call was placed from the defendant's father's residence in Wichita to the defendant's pawn shop in Lawton and that on March 22, a collect call was placed from the Stephens County Jail to the defendant's pawn shop, which conversation lasted ten minutes. On March 26, another call was placed from the Stephens County Jail to the pawn shop. The records further adduce that on March 21, a call was placed from the defendant's residence to a number in Wichita, Kansas, at 11:46. At 11:50 a. m., another call was placed from the defendant's residence to Defendant McCoy's father's residence in Wichita.

For the defense Kenneth Barnett testified that he was the pastor of the Emanuel Baptist Church in Lawton. He testified that on the evening in question he went to the defendant's pawn shop at approximately 8:10 p. m. He stayed at the pawn shop until approximately 2:30 a. m. helping defendant set out some merchandise. He testified that the defendant did not leave the pawn shop during this period of time.

■ The first proposition asserts that the court erred in not granting a continuance requested by the defendant. The record reflects that on May 17, the defendant filed an Application for Continuance, attaching thereto an Affidavit stating that the defendant's attorney had recently had operations on both ankles and his wrist. The doctor's Affidavit further stated that he felt it would be injurious to the health of defense counsel to appear as an attorney in a demanding law suit for a period of six weeks. On May 20, the court issued an order changing the date of trial from June 1 to June 21. The trial court in its order noted that the defense counsel was in fact present in court on May 20. The trial court further found that since three of the co-defendants had not made bond and would have had to remain in jail until the next term of court if the trial were delayed, a great injustice would result. The trial court pointed out that if his defense counsel was unable to physically conduct his defense, that the defendant would have time to hire new counsel. We have consistently held that motions for continuance are addressed to the trial court's sound discretion. Bearden v. State, Okl.Cr., 458 P. 2d 914. In the instant case, we are of the opinion that the trial court did not abuse its discretion in denying the defendant's Motion for Continuance. We further observe that the record reflects that defense counsel did an excellent job in representing the defendant at the trial.

■ The second proposition contends that the court erred in admitting evidence that was incompetent, irrelevant, and immaterial to the prejudice of the defendant. We have carefully examined the alleged incompetent evidence and observed that al-

though some of the evidence is irrelevant and immaterial that the admission of the same did not prejudice the rights of the defendant. Title 20 O.S.1971, § 3001, provides that:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless it be the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

■ The defendant's next five propositions of error are not supported by the citations of authority. We previously held that it is necessary for defendant not only to assert error, but to support his contentions by citations and authority. When this is not done, and it is apparent that the defendant has not been deprived of any fundamental rights; this Court has refused to search the books for authority to support the mere assertion that the trial court was in error. Sandefur v. State, Okl.Cr., 461 P.2d 954.

■ The next proposition asserts that the court erred in unduly restricting examination by the defendant of two of the State's witnesses, Urbin and Julious. We have carefully examined the cross-examination of both witnesses and are of the opinion that the trial court did not err in confining the cross-examination to matters which had been stated on examination in chief. In Hopkins v. State, 9 Okl.Cr. 104, 130 P. 1101, the Court stated:

"When the cross-examination is directed to matters not inquired about in the principal examination, its course and extent are very largely subject to the control of the court in the exercise of a sound discretion; and, unless it affirmatively appears that this discretion was abused, the rulings of the trial court will not be reviewed on appeal. Harrold v. Territory,

18 Okl. 395, 89 P. 202, 10 L.R.A.,N.S., 604, 11 Ann.Cas. 818; Rogers v. State, 8 Okl.Cr. 226, 127 P. 365."

We are of the opinion that the court did not abuse its discretion restricting the cross-examination. If the defendant wished to examine either of the two witnesses on the subject of whether or not defendant Urbin was in fact out on bond and back in Wichita, he could have called them as his own witnesses, which he failed to do.

■ The final proposition asserts that the punishment was excessive, resulting from the combination of errors. We are of the opinion that this proposition is well taken. In the interest of justice the judgment and sentence in Case No. CRF–71–70 is modified to a term of twenty (20) years; the judgment and sentence in Case No. CRF–71–71 is modified to a term of twenty (20) years, said sentences to run concurrently, and as so modified the judgments and sentences are affirmed.

Modified and affirmed.