Helen **LESTER**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. M–76–538.

Court of Criminal Appeals of Oklahoma.

April 8, 1977.

Rehearing Denied May 2, 1977.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge.

Appellant, Helen Lester, hereinafter referred to as defendant, was charged by information in the District Court, Oklahoma County, Case No. CRM–75–3026, for the misdemeanor offense of Negligent Homicide, in violation of 47 O.S.1971, § 11–903. She was convicted in a trial by jury, and her punishment was assessed at one (1) year confinement in the county jail and a fine of One Hundred Dollars ($100.00). From said judgment and sentence a timely appeal has been perfected to this Court.

The first witness for the State was Mrs. Ann W. Frye, who testified that she was the mother of the deceased, Pamela S. Quisenberry. She testified that at approximately 10:00 p. m., on September 13, 1975, she and her daughter were proceeding north on Portland in Oklahoma City, when their car stalled. While attempting to push the stalled car from the intersection, she

heard her daughter scream and heard a crash, and then awakened in the middle of the street where she was being attended to. She testified that the lights of her car were on, both front and back, and that there was a street light burning in the vicinity. Lastly, she testified that there had been light rain on and off all day.

The next witness was Mr. Raymond Frye, who testified that he was the father of the deceased. He learned of the accident from a neighbor and immediately went to the scene which was approximately one block from his house. At that time he used a jack to remove the right front wheel of the deceased's car from his daughter's body. The deceased was unconscious at that time and he was able to detect only faint vital signs.

Mr. Vincent W. Larsen next testified that he was operating a taxi cab on the 13th day of September, 1975, and saw a collision occur at the intersection of 40th and Portland. He testified that the defendant's vehicle was approaching the intersection "at the high rate of speed" and struck the rear of the deceased's vehicle. He further testified that the vehicle was parked directly beneath a street light.

Patsy Ann Green testified that she knew the deceased and was familiar with Mrs. Frye's car. She arrived on the scene about 7 or 8 minutes after the accident occurred and the lights of Mrs. Frye's car were operating and in use. Irene Jones also testified that the lights on the station wagon were shining when she arrived at the scene after the accident had occurred.

Seth Owsley, of the Oklahoma City Police Department, testified that he arrived on the scene at approximately 10:26 p. m. on the above date. He stated that a street light was burning at the intersection, and the point of impact was five feet north of the 40th Street curb line. The final resting place of the station wagon was 61 feet northeast of the point of impact and both front wheels were over the curb. He further testified that the streets were wet.

Sandra Hamilton testified that she was the custodian of the Medical Records at South Community Hospital, Oklahoma City, Oklahoma. The records of the deceased, indicated that she was dead on arrival at that hospital at 10:30 p. m. on September 13, 1975.

It was then stipulated and agreed that if Dr. J. Chapman, State Medical Examiner, were called, he would testify that he examined the body of the deceased and that in his opinion, the proximate cause of death was crushing injuries to the chest and abdomen.

The defendant was then called to the stand and testified that she was twenty-four years old and was employed as a waitress on September 13, 1975. She stated that upon leaving work at approximately 10:00 p. m., and as she drove north on Portland, she came upon a car without any lights. The defendant testified that she was very close to the car before she saw it, and that she turned her wheel and headed toward the curb in order to avoid a collision. She further testified that she was going approximately 25 miles per hour prior to the collision, and that the street lights on the side of the roadway were not working properly.

For the first assignment of error, the defendant alleges that the court erred in restricting the cross-examination of Mr. Larsen, specifically that portion of the cross-examination of the witness which concerned the status of the head lights on the stalled automobile. The portion of the testimony relating to the headlights is as follows:

"Q (By Mr. Hopper) Do you remember the lights being on the car that was stalled on the street?

"MR. JORDAN: That question wasn't asked either.

"MR. HOPPER: Your Honor, this is a witness to the accident and this is a very important issue.

"MR. JORDAN: Your Honor, will you please instruct opposing counsel as to what his cross-examination should be as to each and every witness. He can't examine on anything that the State didn't bring up.

"THE COURT: You're going to have to remember the rules of evidence.

"MR. HOPPER: That's all the questions I have, but I would like for him to stay. (Tr. 18–19).

The defendant also urges that the cross-examination was limited by the court in regard to the rate of speed of the defendant's vehicle, as follows:

"Did it look to you an excessive rate of speed or ordinary under the circumstances?

"A. It was extremely fast.

"Q. Do you remember talking to me about this case before?

"A. Yes, sir.

"Q. Do you remember me asking about the speed of the car at that time?

"MR. JORDAN: Your Honor, I fail to see the relevancy of that question and I must object to it.

"MR. HOPPER: Your Honor, the speed was mentioned on direct examination.

"MR. JORDAN: (Unintelligible.)

"THE COURT: Now, Mr. Hopper and Mr. Jordan, I must remind you again. The court cannot hear both of you at the same time and the reporter cannot get more than one at a time, so let's each one give the other a chance to develop something.

"Now, both of you come here to the bench.

(Thereupon, there was conversation out of the hearing of the reporter and of the jury.)" (Tr. 18).

 After a careful examination of the record, we find that the scope of the direct-examination of witness Larsen did not include reference to the headlights of the stalled automobile. We are of the opinion that the defendant was not prejudiced by the action of the trial court in confining the cross-examination to matters raised in the examination in chief. As stated in *Wolfenbarger v. State*, Okl.Cr., 508 P.2d 694 (1973), cross-examination when directed to matters not inquired about in the principle examination, is largely subject to the control and discretion of the trial court. If the defend-

ant wished to pursue the matter of the headlights and after having asked the witness to remain, she could have called him as her own witness, which she failed to do.

 Regarding the rate of speed of the defendant's vehicle, it is not clear from the record that the trial court actually sustained the objection made by the prosecutor to the question posed by the defendant. The record reveals that conversations were held at the bench out of the hearing of the jury and not recorded. We have repeatedly held that errors urged on appeal must be supported by the record. See, *Agnew v. State*, Okl.Cr., 488 P.2d 382 (1971). Therefore, we conclude that the first assignment of error is without merit.

The defendant contends as her second assignment of error that the trial court erred in refusing the defendant's requested instruction. The defendant offered the following as Instruction No. 1:

"You are instructed that, in order to find the defendant guilty, you must find beyond a reasonable doubt that he or she drove a vehicle in reckless disregard of the safety of others. A higher degree of negligence must be shown to establish the commission of a crime than is required to establish civil liability, and reckless disregard is something approaching wilful or wanton misconduct. It is conduct which demonstrates reckless indifference to the consequences, to life, limb, health, reputation or property rights of another and is more than gross negligence. Reckless disregard of the safety of others is the equivalent of the intentional doing of an act with a wanton and reckless disregard of its possible result; it implies at least the intention of doing an act either with knowledge that serious injury is a probable result or the intention of doing an act with a wanton and reckless disregard of its probable result."

 We cannot agree with the standard as set forth in the defendant's requested instruction, and therefore we find no error in the trial court's refusal to accept the defendant's instruction. The correct in-

struction for defining "reckless disregard of the safety of others" is found discussed at length in the recent case of *Thompson v. State*, Okl.Cr., 554 P.2d 105 (1976). In that case we held that the standard to be used in cases arising under 47 O.S.1971, § 11–903, is the same standard which this Court applied in all cases tried under 21 O.S.1971, § 716 (Manslaughter Second Degree). Thus, the definition of reckless disregard is precisely the same as the definition of culpable negligence:

> "Culpable negligence is the omission to do something which a reasonable and prudent person would do, or the want of the usual and ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions."

> "With this in mind, it is unnecessary to attempt to characterize this definition as ordinary negligence, gross negligence, or as any other degree of negligence." *Thompson v. State*, at page 108.

■ Because the instant case was tried prior to the *Thompson* decision, the judge did not give an instruction on reckless disregard as set forth in *Thompson*. In deciding whether the trial court's instructions met the standard in *Thompson*, supra, it is well settled that the interpretation of all instructions should be considered as a whole and not separately. See, *Hall v. State*, 80 Okl.Cr. 310, 159 P.2d 283 (1945). The judge did instruct as follows:

Instruction No. 4:
"* * *

"(a) When the death of any person ensures within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide."

Instruction No. 5:
"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

■ The trial court's 4th Instruction comes directly from the negligent homicide statute and is clearly appropriate. The 5th Instruction, which attempts to set the standard for reckless disregard, comes from 47 O.S.1971, § 11–801(a). As we stated previously, culpable negligence is defined as the want of ordinary care, and § 11–801(a) sets forth more specifically the requirements of ordinary care when operating a motor vehicle. In *Moore v. Strong*, 360 F.2d 71 (10th Cir. 1966), the 10th Circuit discussed the "assured clear distance" phrase found in the latter part of § 11–801(a) and concluded that the statute is not inflexible but must be "given a reasonable meaning, and its application contemplates a lawful use of the highway by all drivers of vehicles thereon." Moreover, past Oklahoma decisions have referred to § 11–801(a) when considering the standard of negligence breached by a driver of a vehicle convicted of manslaughter in the second degree, see, *Wilson v. State*, 70 Okl.Cr. 262, 105 P.2d 789 (1940); *Holland v. State*, Okl.Cr., 274 P.2d 792 (1954), which has been held to be superseded by negligent homicide. *Atchley v. State*, Okl.Cr., 473 P.2d 286 (1970). Therefore, although we find that the instruction in the case at bar adequately defined reckless disregard, in future cases we encourage the use of the definition found in *Thompson* substituting the words reckless disregard for the words culpable negligence.

The judgment and sentence appealed from is *AFFIRMED*.

BLISS, J., concurs.

BRETT, Judge, dissents.

The majority opinion has sounded the death knell for requiring that a defendant be culpable in order to be found guilty of negligent homicide. The statute under which the defendant was charged is 47 O.S. 1971, § 11–903(a), which states:

"When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle *in reckless disregard of the safety of others*, the person so operating such vehicle shall be guilty of negligent homicide." (Emphasis added)

Here, no question was raised as to whether the person died within one year as the proximate result of injury received by the vehicle defendant was driving at the time of the occurrence of the injury. The question is whether the jury was properly instructed regarding the element of "reckless disregard of the safety of others."

Less than one year ago, this Court in *Thompson v. State*, Okl.Cr., 554 P.2d 105 (1976), stated that "reckless disregard of the safety of others" was the same as culpable negligence.[1] Quoting *Freeman v. State*, 69 Okl.Cr. 164, 101 P.2d 653 (1940), and *Crossett v. State*, 96 Okl.Cr. 209, 252 P.2d 150 (1952), at page 108 of *Thompson v. State*, this Court defined "in reckless disregard for the safety of others" as ". . . the omission to do something which a reasonable and prudent person would do, or the want of the usual and ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions." Saying that the definition need not be categorized as ordinary, gross or any other degree of negligence, the Court said that what was important was that the jury be given a proper definition of reckless disregard "to which it could readily apply a factual situation."

It should be noted that *Thompson v. State*, supra, appears to require a lesser degree of negligence than do those cases which it purports to follow. In both *Free-*

*man v. State*, supra, 101 P.2d at 662 and *Crossett v. State*, supra, 252 P.2d at 159, this Court quoted *Nail v. State*, 33 Okl.Cr. 100, 242 P. 270, 272 (1925), stating:

" 'By no means every instance where one person is injured or killed by a vehicle driven by another do the circumstances constitute a crime. There must be negligence rising to the degree of criminal or culpable negligence. The culpability of a defendant is a question of fact for the jury, and the test is: Do the acts charged as criminal show a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and did said acts cause the death of deceased? If so, it establishes a case of criminal negligence.' "

In *Nail v. State*, supra, at 272, this Court quoted in part from Bevan, Negligence in Law, Vol. 3, page 7, saying:

" ' . . . Criminal negligence per se does not differ from negligence simply. The same negligence, as it affects the individual and the state, is, respectively, gross negligence and criminal negligence. . . . Criminal negligence then is negligence in such circumstances that it imposes an obligation remissible by the state, but irremissible by the individual actually damnified by it; and since the state will not lightly intervene, criminal negligence must be some "substantial thing" and not a mere casual inadvertence. Between criminal negligence, however, and actionable negligence, there is no principle of discrimination, but a question of degree only.' "

See also, *Wilson v. State*, 70 Okl.Cr. 262, 105 P.2d 789, 791 (1940).

The majority would now tell us that even the finding of a lesser degree of negligence

---

1. Most states require a higher degree of negligence for a finding of culpable negligence than did Oklahoma, even before the instant case. For a discussion of the requirements for a finding of culpable negligence in Oklahoma and other jurisdictions, see Annot. *Test of Criteria of Term, "Culpable Negligence," "Criminal Negligence," or "Gross Negligence" Appearing in Statute Defining or Governing Manslaughter*, 161 A.L.R. 10 (1946). Where a negligent homicide statute describes the culpa-

ble standard in terms of negligence rather than in terms of operating a vehicle in a reckless manner or with disregard for the safety of others, etc., the standard of culpability generally has been held to be ordinary negligence as opposed to criminal negligence, gross negligence or wilfulness. See, Annot. *What Amounts to Negligence Within Meaning of Statutes Penalizing Negligent Homicide by Operation of a Motor Vehicle*, 20 A.L.R.2d 473 (1968).

mandated by *Thompson v. State*, supra, is not required. Taking the instructions to the jury as a whole, the only instructions dealing even tangentially with "in reckless disregard of the safety of others" are number 4, which is the negligent homicide statute, 47 O.S.1971, § 11–903(a), and number 5, which is set out in full in the majority opinion, and which is 47 O.S.1971, § 11–801(a). No definition of "in reckless disregard of the safety of others" was given to the jury "to which it could readily apply a factual situation," as is required by *Thompson*.

Absent an instruction on what constitutes "in reckless disregard of human safety," I think instruction number 5 is tantamount to a directed verdict of guilt. The majority opinion states that instruction number 5 is a more particular definition of ordinary care in operating a motor vehicle. However, when one looks at the Highway Safety Code it is clear that the legislature intended that "in reckless disregard of the safety of others" mean something other that the mere violation of one of the standards set forth in 47 O.S.1971, § 11–801. As pointed out previously, Section 11–903(a) requires that the motor vehicle be operated "in reckless disregard of the safety of others." Section 11–901(a) defines reckless driving as driving a motor vehicle "in a careless or wanton manner without regard for the safety of persons or property *or* in violation of the conditions outlined in section 11–801." (Emphasis added) Although the words used are not identical, "in reckless disregard of the safety of others" and "in a careless or wanton manner without regard for the safety of persons . . . " in effect mean the same thing. Therefore, in adding "or in violation of the conditions outlined in Section 11–801," the legislature made it clear that merely violating the conditions of 11–801 is not in and of itself being "in reckless disregard of the safety of others."

The majority opinion cites three cases which deal with the phrase "assured clear distance ahead" found in the latter part of 47 O.S.1971, § 11–801(a) and in jury instruction number 5. However, a reading of the cited cases shows that they ought not be used as authority for not requiring an instruction on the meaning of "in reckless disregard of the safety of others." *Moore v. Strong*, 360 F.2d 71 (10th Cir. 1966) is a civil case involving compensatory damages, and therefore is a minimal value in the context of the instant case. In *Wilson v. State*, supra, the defendant's criminal liability for her inability to stop her car in an "assured clear distance ahead" was determined in the context of the definition of culpable negligence discussed above. In *Holland v. State*, Okl.Cr., 274 P.2d 792, 794 (1954), this Court pointed out that the section of the statute involving "assured clear distance ahead" was only incidentally involved in the case. The Court further said that what constituted an "assured distance ahead" was a fact question, and varied with the circumstances of each case. While traveling about 40 miles per hour in Tulsa, Holland passed a truck which was obscuring his vision in an intersection. He passed against approaching traffic and knocked down and ran over a pedestrian, and then fled. At the time he hit the pedestrian, he was straddling the center line and moving at approximately 25 miles per hour. Here, the defendant was clearly culpably negligent.

In the instant case, there was no instruction giving a definition of "reckless disregard of the safety of others" to which the jury could readily apply the factual situation, and instruction number 5, as it was given with the two sections of it in the conjunctive, in effect instructed the jury that if they found that the defendant had driven her car into the deceased's car and a death resulted, they should find the defendant guilty of negligent homicide. Therefore, the instructions were not in keeping with the requirements of *Thompson v. State*, supra, or of prior case law, and created criminal liability in the absence of a finding of even ordinary negligence on the part of the defendant.

I also believe that the defendant did not receive adequate representation at her trial.

The defendant's financial status forced her to depend on the Public Defender's Office to represent her at her trial. Notwithstanding the fact that negligent homicide is a misdemeanor offense, the maximum punishment is one (1) year's confinement in the County Jail and a One Thousand Dollar ($1,000.00) fine. The record shows that through the inexperience of the legal intern who represented the defendant, she was not properly represented. The record also clearly reveals that the intern's supervising attorney did not step in at appropriate times to render the assistance the intern required. The legal intern failed to obtain the necessary information to show that the defendant operated her car as any other ordinary and prudent person would have operated a vehicle. For example, during cross-examination, the taxi driver was permitted to say that the defendant's vehicle was traveling "extremely fast," but the intern was not allowed to question the driver about his prior statements regarding the defendant's speed at the time of the impact. I believe that with proper cross-examination it would have been shown that this witness was unable to estimate the speed of the oncoming vehicle at night when rain was falling. In addition, the record reflects that at the time of the accident the taxi driver was engaged in a conversation with his passenger about her destination, and the taxi driver testified that he was unfamiliar with the part of town where the accident occurred. Also, the record fails to reflect whether that part of South Portland Avenue is a two lane or a four lane road. Nowhere in the record is there any testimony which reveals what the speed limit at that particular place might have been. Consequently, I can draw no conclusion other than that the defendant did not receive adequate representation at her trial.

I believe that after considering all the facts involved—road conditions, weather conditions, and the fact that the stalled vehicle was in the middle of the intersection—that the defendant did what any ordinary and prudent person would have done under the same or similar circumstances, including trying to jump the curb when she saw the stalled car. There are circumstances concerning automobile accidents the cause for which cannot be specifically placed upon any particular individual, and I believe this is one of those situations. The proper administration of justice dictates that the defendant not be tried with negligent homicide under the circumstances contained in this record.

I would further point out that in the *Thompson* case, where the defendant was clearly culpably negligent, the defendant was given only a five hundred dollar fine. Here, the defendant was given a one year sentence and a one hundred dollar fine. Therefore, insofar as the majority of this Court affirms the conviction, I urge the Public Defender to apply to the trial court for a suspended sentence under the provisions of 22 O.S.1971, § 994. I believe the facts and circumstances of this case clearly warrant the suspension of the sentence imposed on the defendant.